UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SMALL JUSTICE, LLC and RICHARD A. GOREN,<br><br>    Plaintiffs,<br><br>    v.<br><br>XCENTRIC VENTURES, LLC,<br><br>    Defendant. | Case No. 1:13-CV-11701<br><br>**MOTION TO DISMISS**<br>**FIRST AMENDED COMPLAINT** |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant XCENTRIC VENTURES, LLC ("Xcentric") respectfully moves the Court for an order dismissing the third, fourth and fifth counts in Plaintiffs SMALL JUSTICE, LLC and RICHARD A. GOREN's ("Plaintiffs" or "Mr. Goren") First Amended Complaint (Doc. #13) on the basis that assuming all material facts as pleaded are true, they fail to state a claim upon which relief may be granted. Furthermore, pursuant to Fed. R. Civ. P. 12(b)(1) Defendant XCENTRIC VENTURES, LLC ("Xcentric") respectfully moves the Court for an order dismissing this matter without prejudice on the basis that the Court lacks subject matter jurisdiction over this case. Both points are explained herein.

I.   INTRODUCTION

This case was commenced with a Complaint (Doc. #1) asserting a single cause of action for copyright infringement. The "work" allegedly infringed is a derogatory Internet post about the Plaintiff written by a third party and published on Xcentric's website www.RipoffReport.com in January 2013. For purposes of clarity, this initial post is referred to as "Report #831689."

Unhappy about this online criticism, in early 2013 Mr. Goren filed a defamation action against the alleged author in Massachusetts Superior Court. After the defendant failed to appear, in May 2013 Mr. Goren obtained a default judgment from the state court that purported to

1

transfer ownership of the copyright in Report #831689 from the defendant to Mr. Goren. *See* Doc. #1 at ¶ 13 and Exhibit A thereto.

On May 14, 2013 and June 25, 2013, believing incorrectly that the state court judgment had the effect of granting him ownership of the copyright in Report #831689, Mr. Goren wrote to Xcentric and threatened to commence legal action unless it removed that report. On June 27, 2013, Xcentric responded to the demand letter by email refusing to do so. Mr. Goren filed the initial Complaint in this action against Xcentric three weeks later, on July 16, 2013.

On August 8, 2013, Xcentric filed a Motion to Dismiss (Doc. #8). In its motion, Xcentric argued that this Court lacked subject matter jurisdiction because Mr. Goren has no valid copyright interest in Report #831689 and thus lacked standing to sue for infringement. Furthermore, Xcentric's motion argued that because Mr. Goren had both actual and constructive knowledge of Xcentric's status as the exclusive registered owner of the copyright in Report #831689, his subsequent transfer failed as a matter of law per 17 U.S.C. § 205(d).

Rather than responding to the merits of these arguments, on September 2, 2013 Mr. Goren filed a First Amended Complaint ("FAC"; Doc. #13). The FAC differs from the original Complaint in two primary respects.

First, in addition to claiming ownership of Report #831689, Mr. Goren now alleges ownership of a *second* complaint about him posted on www.RipoffReport.com on February 2, 2012 bearing Report #833025. The FAC alleges that on August 16, 2013, the Massachusetts Superior Court amended its prior default judgment resulting in a transfer of copyright ownership in the second post, Report #833025, from the author to Mr. Goren. *See* Doc. #13 at ¶¶ 16, 53–55 and Exhibit C thereto. Based on this change, Mr. Goren's infringement claim now involves two reports about him, not just one. This change affects the scope of the claim but not its substance.

Second, the FAC includes three new affirmative claims for relief against Xcentric based on libel, tortious interference, and unfair and deceptive acts under Mass. G.L. c. 93A ("Chapter 93A"). The libel and tortious interference claims are premised solely on Xcentric's "publication" of the two reports about Mr. Goren. The Chapter 93A claim is based on both the "publication" of these reports and also on Xcentric's assertion that it is entitled to immunity for such "publication" under the Communications Decency Act, 47 U.S.C. § 230(c)(1) (the "CDA"); a legal point which Mr. Goren implies is false.

In addition to these two substantive changes, the FAC also includes a new cause of action not presented in the original Complaint—declaratory relief. The new claim, Plaintiffs' first cause of action, seeks a declaration as to which party actually owns the copyrights to the two disputed reports.

In light of these changes, Xcentric once again seeks dismissal of this action for many of the same jurisdictional reasons presented in its first Motion to Dismiss. In short, the facts alleged in the FAC combined with the additional evidence offered by Xcentric shows that Mr. Goren and his entity Small Justice, LLC are not the owners of any valid copyright interests in the works at issue and thus they have no standing to sue for infringement. In addition, the new claims presented in the FAC are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) because they fail to state a claim upon which relief may be granted. To the extent these new claims arise from Xcentric's "publication" of the two reports about Mr. Goren, those claims are wholly barred by the Communications Decency Act. Furthermore, Xcentric's own statements regarding legal matters (including its assertion that it is entitled to immunity under the CDA) are not actionable because: (1) the statements are non-actionable discussions of future events; and (2) even if false, the statements are protected under the litigation privilege.

II.     ARGUMENT

### a. Claims 3–5 Are Barred By The Communications Decency Act

Taking the easier issue first, to the extent they are based on Xcentric's "publication" of the two reports about Mr. Goren, the following claims in the FAC must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6): libel (Count 3), tortious interference (Count 4) and unfair/deceptive business acts (Count 5).  This is so because the Communications Decency Act, 47 U.S.C. § 230 (c)(1), expressly prohibits Mr. Goren from treating Xcentric as the "speaker or publisher" of material posted on the Ripoff Report website by a third party.

The CDA is a federal statue containing just 26 words: "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  This section provides website operators and users with "broad immunity" against virtually all state-law claims as long as three points are established: "(1) [defendant] is a 'provider or user of an interactive computer service'; (2) the claim is based on 'information provided by another information content provider'; and (3) the claim would treat [defendant] 'as the publisher or speaker' of that information." *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007).[1]

Based on these simple and clear standards, every state and federal court that has considered the merits of a state-law claim against the Ripoff Report has agreed—*without exception*—that Xcentric is entitled to CDA immunity for statements posted on the site by third parties.  *See, e.g.*, *Asia Econ. Inst., LLC v. Xcentric Ventures, LLC*, 2011 WL 2469822 (C.D. Cal. 2011) (explaining, "The Court notes that this very issue has been litigated by several district

---

[1] The CDA contains an express exemption for "any law pertaining to intellectual property."  47 U.S.C. § 230(e)(2); *see Universal Commc'n Sys.*, 478 F.3d at 422–23.  Based on this exception, Xcentric agrees the copyright claim is not barred by the CDA.

courts to date, where nearly identical allegations against Xcentric … based on Ripoff Report postings have been barred under the CDA.  The Court also finds that the CDA applies to [Xcentric] here.") (citing *GW Equity, LLC v. Xcentric Ventures, LLC*, 2009 WL 62173 (N.D. Tex. 2009) (finding Xcentric entitled to CDA immunity); *Intellect Art Multimedia, Inc. v. Milewski*, 2009 WL 2915273 (N.Y. App. Div. 2008) (same); *Whitney Information Network, Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095 (M.D. Fla. 2008) (same); *Global Royalties v. Xcentric Ventures, LLC*, 544 F. Supp. 2d 929, 933 (D. Ariz. 2008) (same, and explaining, "Unless Congress amends the statute, it is legally (although perhaps not ethically) beside the point whether [Xcentric] refuse[s] to remove the material, or how they might use it to their advantage.  Through the CDA, 'Congress granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party.'") (quoting *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003)); *see also Giordano v. Romeo*, 76 So. 3d 1100, 1102 (Fla. 3d Dist. 2011) (agreeing, "<u>the law on this issue is clear</u>.  Xcentric enjoys complete immunity [under the CDA] from any action brought against it as a result of the postings of third party users of its website.") (emphasis added).

As all previous courts have done, this Court should hold that Plaintiffs' third, fourth and fifth causes of action are barred by the CDA to the extent they seek to treat Xcentric as the "publisher" of material posted on the Ripoff Report website by a third party.  For purposes of clarity, paragraphs 72 and 78 in the FAC conclusively establish that Mr. Goren's third and fourth causes of action are based <u>solely</u> on Xcentric's "publication" or "public display" of third party content—Report #s #831689 and 833025.

As a matter of law, the CDA expressly prohibits Mr. Goren from treating Xcentric as the "speaker or publisher" of those reports.  Thus, the third and fourth causes of action are subject to

dismissal in their entirety under Rule 12(b)(6).  *See Global Royalties*, *supra*, 544 F. Supp. 2d at 931 and *Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 2007 WL 2949002 (D. Ariz. 2007) (finding Rule 12(b)(6) dismissal of defamation claims proper when allegations in complaint show claims are barred by the CDA); *see also Universal Commc'n*, 478 F.3d at 417 (finding Rule 12(b)(6) dismissal based on CDA immunity was proper); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009) (agreeing 12(b)(6) dismissal is proper vehicle to resolve claims based on CDA immunity); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) (same); *Beyond Systems, Inc. v. Keynetics, Inc.*, 422 F.Supp.2d 523 (D. Md. 2006).

Furthermore, Mr. Goren's fifth cause of action—Chapter 93A—is subject to partial dismissal based on the allegations in paragraph 85 of the FAC which state: "XCENTRIC's <u>publication</u> or <u>public display</u> of either or both of the per se defamatory January 31, 2012 and the February 2, 2012 Ripoff Reports under color of its exclusive ownership of each such work, constitutes unfair and deceptive business practices." (emphasis added).  To the extent the fifth cause of action is based on this allegation, it is plainly barred by the CDA; "If the cause of action is one that would treat the service provider as the <u>publisher of a particular posting</u>, [CDA] <u>immunity applies</u> not only for the service provider's decisions with respect to that posting, but also for its inherent decisions about how to treat postings generally." *Universal Commc'n*, 478 F. 3d at 422 (emphasis added); *see also Asia Econ. Inst.*, 2011 WL 2469822, * 8 (finding CDA barred unfair business practice claims against Xcentric to the extent those claims were premised on the "publication" of third party posts); *Perfect 10, Inc. v. CCBill, LLC*, 488 F.3d 1102, 1108, 1118–19 (9th Cir. 2007) (holding CDA provided immunity from state unfair competition and false advertising actions).

Again, just to be clear—Xcentric does not argue that the CDA applies to Mr. Goren's fifth cause of action to the extent it is based on the allegations set forth in paragraph 86 of the FAC (alleging: "XCENTRIC'S statements that it was immune under 47 U.S.C. § 230 as a neutral internet Interactive Computer Service Provider constitute unfair and deceptive representations"). The CDA only prevents Mr. Goren from treating Xcentric as the "speaker or publisher" of material written by "*another*"; i.e., a third party. *See Global Royalties*, 544 F.Supp.2d at 932 (noting, "The CDA immunizes website operators from liability for content provided "by *another* information content provider.") (emphasis in original). By the same token, the CDA <u>never</u> applies to material which Xcentric itself created. *See Universal Commc'n*, 478 F.3d at 419 (observing, "an interactive computer service provider remains liable for its own speech.") (citing *Anthony v. Yahoo! Inc.*, 421 F.Supp.2d 1257, 1262-63 (N.D.Cal. 2006).

For that reason, Xcentric only seeks dismissal of the fifth cause of action under Rule 12 (b)(6) as to the allegations in paragraph 85 of the FAC. As to the remaining allegations in paragraph 86 (relating to Xcentric's pre-litigation representations to Mr. Goren that it was entitled to immunity under the CDA), that portion of the claim fails on its own for other independent reasons as explained *infra*.

### b. Xcentric's Own Comments About The Law Are Not Actionable

As noted above, Xcentric agrees that the CDA does not apply to its own statements. Thus, Mr. Goren's fifth cause of action, under Chapter 93A, is not barred by the CDA to the extent that claim seeks to impose liability based on "XCENTRIC's statements that it was immune under 47 U.S.C. § 230 as a neutral internet Interactive Computer Service Provider constitute unfair and deceptive representations." FAC ¶ 86.

However, this claim is nevertheless subject to dismissal because any statement Xcentric made to Mr. Goren concerning its legal position is absolutely protected by the litigation privilege. *See* Affidavit of David S. Gingras ("Gingras Aff.") ¶¶ 18-22.[2] That privilege provides "'that statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding.'" *Visnick v. Caulfield,* 73 Mass. App. Ct. 809, 812, 901 N.E.2d 1261, 1263 (2009) (quoting *Sriberg v. Raymond,* 370 Mass. 105, 108, 345 N.E.2d 882 (1976)). "'The [litigation] privilege extends to circumstances where the statements are made preliminary to a proposed or contemplated judicial proceeding as long as they bear some relation to the proceeding.'" *Id.* at 812, 901 N.E.2d at 1264 (quoting *Fisher v. Lint,* 69 Mass. App. Ct. 360, 366, 868 N.E.2d 161 (2007)). Moreover, it applies "even if the offensive statements are uttered maliciously or in bad faith[,]" and it "immunizes the maker of the statements from any civil liability arising from those statements." *Encompass Ins. Co. of Mass. v. Giampa,* 522 F. Supp. 2d 300, 308 (D. Mass. 2007) (quotations and citations omitted).

Xcentric's remarks to Mr. Goren describing its legal position vis-à-vis this case such as those described in paragraph 51 of the FAC (asserting that Xcentric was entitled to protection under the CDA) are directly related to this litigation and thus are squarely within the litigation privilege. *See Doe v. Nutter, McClennen & Fish*, 41 Mass. App. Ct. 137, 688 N.E. 2d 1329

---

[2] On this Rule 12(b)(6) motion, the Court may properly consider Goren's demand and Xcentric's response because they were "explicitly relied upon in the complaint, even though not attached to the complaint." *Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (internal quotation omitted). "'[W]hen ... a complaint's factual allegations are expressly linked to — and admittedly dependent upon — a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16-17 (1st Cir. 1998)).

(Mass. App. Ct. 1996), *rev. denied*, 423 Mass. 1111 (Mass. 1996) (holding a response to a pre-litigation demand letter is subject to "absolute" privilege). Furthermore, even if Xcentric's comments somehow fell outside the privilege, any statements made about Xcentric's expectations as to future rulings by this or any other court are *per se* non-actionable as expressions of opinion regarding future events. *See Winter Panel Corp. v. Reichhold Chemicals, Inc.*, 823 F. Supp. 963, 974 (D. Mass. 1993) (noting, "Statements of opinion or judgment relating to future events are not actionable [under chapter 93], where the future event is not fully within the declarant's control.") (emphasis added). Clearly, this Court's ultimate interpretation of the CDA is a future matter outside Xcentric's control.

For these reasons, Mr. Goren's fifth cause of action fails to state a cognizable claim and should be dismissed with prejudice.

### c. Plaintiffs Lack Standing To Sue For Copyright Infringement

Due to the Constitutional limits imposed by Article III, "Every plaintiff bringing suit in federal court must establish Article III standing." *Blum v. Holder,* ___ F.Supp.2d ___, 2013 WL 1097818, *6 (D. Mass. 2013) (citing *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 46 (1st Cir. 2011)). Without Article III standing, a federal court lacks subject matter jurisdiction to decide the case. *See Libertad v. Welch*, 53 F.3d 428, 436 (1st Cir. 1995) (noting, "If a plaintiff lacks standing to bring a matter before a [federal] court, the court lacks jurisdiction to decide the merits of the underlying case.") (citing *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992)). It is always a federal plaintiff's burden to establish subject matter jurisdiction in each case. *See Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (noting courts must be ""mindful that the party invoking the jurisdiction of a federal court carries the burden of proving

its existence'"), *cert. denied*, 515 U.S. 1144, 115 S. Ct. 2581 (1995) (quoting *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993)).

In an action for copyright infringement such as this, standing requires the plaintiff to show, *inter alia*, that he actually owns the work allegedly infringed; "If a claimant does not own a copyright, the claimant does not have standing to sue for infringement of the exclusive rights belonging to the owner … . Standing to assert a copyright claim is a jurisdictional requirement, and the Court must dismiss an action for lack of subject matter jurisdiction if it determines the plaintiff lacks standing." *Giddings v. Vision House Prod., Inc.*, 584 F. Supp. 2d 1222, 1228–29 (D. Ariz. 2008) (citing *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 889 (9th Cir. 2005); *Lewis v. Casey*, 518 U.S. 343, 349 n. 1, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)); *see also* 17 U.S.C. § 501(b) (stating, "The legal or beneficial owner of an exclusive right under a copyright is entitled … to institute an action for any infringement of that particular right committed while he or she is the owner of it."); *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 484 (1st Cir. 1985) (agreeing, "If a plaintiff is not the author of the copyrighted work then he or she must establish a proprietary right through the chain of title in order to support a valid claim to the copyright. [citations] <u>Absent this showing, a plaintiff does not have standing to bring an action under the Copyright Act</u>.") (emphasis added) (citing *Bell v. Combined Registry Co.*, 397 F. Supp. 1241, 1245 (N.D. Ill. 1975), *aff'd*, 536 F.2d 164 (7th Cir. 1976), *cert. denied*, 429 U.S. 1001, 97 S. Ct. 530, 50 L. Ed. 2d 612 (1976)); *see also Righthaven, LLC v. Hoehn*, 716 F.3d 1166 (9th Cir. 2013) (affirming district court's dismissal for lack of subject matter jurisdiction when plaintiff lacked standing based on failure to establish ownership of the work allegedly infringed); *Righthaven LLC v. Newman*, 838 F. Supp. 2d 1071 (D. Nev. 2011) (same); *Righthaven LLC v. Democratic Underground, LLC*, 791 F. Supp. 2d 968 (D. Nev. 2011) (same).

Importantly, when deciding a motion under Rule 12(b)(1), "[t]he Court is not restricted … to examining only the pleadings but may review any evidence, including affidavits, to determine any disputed facts upon which the motion or the opposition to it is predicated." *Casey v. Lifespan Corp.*, 62 F. Supp. 2d 471, 474 (D.R.I. 1999); *see also Aversa v. United States*, 99 F. 3d 1200, 1210 (1st Cir. 1996) (noting when faced with a challenge to subject matter jurisdiction, "the court may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in this case").

With these points in mind, the evidence here is clear—Plaintiffs simply do not own the works that are the subject of this infringement action. On the contrary, the works allegedly infringed by Xcentric are, in fact, owned exclusively by Xcentric. Accordingly, as a non-owner Mr. Goren has no standing to sue for infringement and without such standing this Court lacks subject matter jurisdiction over this case.

### d. Xcentric Is The Lawful Registered Owner Of The Works At Issue

As noted above, when investigating its own subject matter jurisdiction, the Court is *not* confined to the pleadings. For that reason, Xcentric offers the following additional information and evidence which conclusively establishes that it is the sole rightful owner of the work at issue in this case.

To begin, Xcentric operates a website located at www.RipoffReport.com (the "Ripoff Report") which is an online consumer advocacy forum that allows users to post free complaints called "reports". Reports may be submitted on any topic, but they are generally focused on companies and/or individuals who have wronged the author in some manner. *See* Gingras Aff. ¶ 4. Subjects of reports are also allowed to post a free response—known as a "rebuttal"—explaining their side of the story. *Id.* Since it was founded in 1998, the Ripoff Report site has

received more than 1.6 million unique user-submitted reports and many millions of responses/ rebuttals. *Id*.

Before a user is allowed to post anything, they are required to create a free account with the Ripoff Report site. As part of this process and as is common practice for such sites, users must affirmatively accept and agree to Xcentric's Terms of Service ("TOS"). Gingras Aff. ¶ 5. Among other things, the current version of Xcentric's TOS (in place since April 8, 2010) provides as follows:

> **6. Proprietary Rights/Grant of Exclusive Rights**
>
> By posting information or content to any public area of www.RipoffReport.com, <u>you automatically grant, and you represent and warrant that you have the right to grant, to Xcentric an irrevocable, perpetual, fully-paid, worldwide exclusive license to use, copy, perform, display and distribute such information</u> and content and to prepare derivative works of, or incorporate into other works, such information and content, and to grant and authorize sublicenses of the foregoing. (emphasis added)

Gingras Aff. ¶ 6. Based on the language in its Terms of Service, Xcentric owns a valid, enforceable exclusive license to all content posted on the site by users. *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, __ F.3d ___, 2013 WL 3722365, *8 (4th Cir. 2013) (holding pursuant to federal "E-Sign Act", 15 U.S.C. § 7001, website user "who 'clicks yes' in response to [a website owner's Terms of Service] prior to uploading copyrighted photographs, has *signed a written* transfer of the exclusive rights of copyright ownership in those photographs consistent with Section 204(a).") (emphasis in original). An exclusive license is a type of copyright ownership. *See* 17 U.S.C. § 101 (explaining, "A '<u>transfer of copyright ownership</u>' is an assignment, mortgage, <u>exclusive license</u>, or any other conveyance … .") (emphasis added). Users who do not agree to Xcentric's Terms of Service are prohibited from posting any reports/ rebuttals on the Ripoff Report site. Gingras Aff. ¶ 7.

As part of its efforts to protect its valuable rights in its vast database of content, Xcentric has registered various copyrights in the material appearing on its site. As it relates to this case, on March 7, 2012 Xcentric applied for and received a Certificate of Registration, Reg. No. TX 7-491-670 (the "'670 Copyright"), establishing its exclusive copyright to all content posted on the Ripoff Report website between <u>January 1, 2012 and March 7, 2012</u>. Gingras Aff. ¶¶ 9–10. The '670 copyright includes both reports which Mr. Goren claims are his copyrighted works.

Specifically, the First Amended Complaint asserts ownership of two reports about Mr. Goren – one dated January 31, 2012 and the other dated February 2, 2012. *See* FAC ¶¶ 11, 16. These reports have been designated Report #s 831689 and 833025 and are attached to Mr. Gingras' affidavit as Exhibits C and D, respectively. Mr. Goren alleges that he acquired copyright ownership of these works based on a state-court default judgment entered in May 2013 and subsequently amended in August 2013. A copy of the amended default judgment is attached as Exhibit C to the FAC.

According to paragraph 25 of the FAC, Mr. Goren acknowledges that Xcentric's '670 copyright dated March 7, 2012 includes both of these reports, but he alleges ownership of these works was subsequently assigned to him (by virtue of the default judgment) in July and August 2013. *See* FAC ¶ 55. Based on this assignment, Mr. Goren asserts that he is now the sole rightful owner of the copyright in Report #s 831689 and 833025 and that Xcentric's prior registered copyright in those reports is essentially non-existent.

As noted above, for Mr. Goren to have standing to bring this action he must demonstrate a valid chain of title sufficient to give him exclusive rights to the works allegedly infringed. *See Motta*, 768 F.2d at 484 (agreeing, "If a plaintiff is not the author of the copyrighted work then he or she must establish a proprietary right through the chain of title in order to support a valid

13

claim to the copyright. [citations]   Absent this showing, a plaintiff does not have standing to bring an action under the Copyright Act.")

In light of the admissions in his Amended Complaint and the circumstances under which he claims ownership of these reports, it is clear that Mr. Goren has no copyright interest at all and thus no standing to sue for two separate reasons.

### e. Plaintiff's Later Conflicting Transfer Fails Under 17 U.S.C. § 205

It is undisputed that Xcentric owns a *registered* copyright in both disputed works as evidenced by the '670 registration. Thus, Xcentric's rights prevail against any subsequent conflicting transfer pursuant to 17 U.S.C. § 205(d) which provides:

> (d)   **Priority Between Conflicting Transfers.** — As between two conflicting transfers, the one executed first prevails if it is recorded, in the manner required to give constructive notice under subsection (c), within one month after its execution in the United States or within two months after its execution outside the United States, or at any time before recordation in such manner of the later transfer.   **Otherwise the later transfer prevails** if recorded first in such manner, and if taken in good faith, for valuable consideration or on the basis of a binding promise to pay royalties, **and without notice of the earlier transfer**.

17 U.S.C. § 205(d) (emphasis added).

As explained in Section 205(d), in addition to other requirements such as the payment of consideration, a later transferee (Mr. Goren) can only prevail against an earlier transferee (Xcentric) if the later transferee *lacked actual or constructive notice of the first transfer*.  Here, Xcentric's ownership interest was registered with the U.S. Copyright Office in March 2012; a point Mr. Goren does not dispute.  *See* FAC ¶25.

Of course, *recordation* of an assignment under 17 U.S.C. § 205 and *registration* of a claim of ownership under 17 U.S.C. § 408 are two different things. However, for the purposes of resolving a conflicting transfer under Section 205(d) they are treated equally; both recordation

and registration provide the same constructive notice of the first claimant's superior rights. Thus, because Xcentric's ownership interest was registered <u>first</u>, long before Mr. Goren's attempted transfer, Xcentric's interest prevails under § 205(d). *See Latin American Music Co., Inc. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32, 40–42 (1st Cir. 2007) (expressly holding that an earlier copyright registration provides constructive notice sufficient to defeat a later conflicting transfer under 17 U.S.C. § 205(d) and affirming "the district court's ruling that registration of a copyright constitutes notice for purpose of § 205(d).")

Thus, at the time Mr. Goren applied for registration of the same works in July and September, 2013, he had constructive notice of Xcentric's earlier ownership status as a matter of law; "A copyright registration certificate issued by and filed with the Copyright Office thus serves to put the world on constructive notice as to the ownership of the copyright and of the facts stated in the registration certificate." *Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc.*, 119 F.3d 55, 66 (1st Cir. 1997). Because Mr. Goren had notice of Xcentric's exclusive rights to Report #831689 and 833025 when he attempted to register the same works more than a year later, Mr. Goren's alleged conflicting transfer fails under Section 205(d).

In addition to the constructive notice imparted by Xcentric's registration, Mr. Goren also plainly had *actual knowledge* of Xcentric's exclusive rights to these reports. This is so because each report (like all reports on the Ripoff Report website) includes an informational footer directly below the actual report text. This footer plainly and prominently informed anyone viewing the page that "<u>Ripoff Report has an exclusive license to this report</u>." Thus, even without the constructive notice provided by Xcentric's pre-existing registered copyright, Mr. Goren's alleged conflicting transfer fails under Section 205(d) because he had actual knowledge of the

earlier transfer of an exclusive license to Xcentric.  For that reason, Mr. Goren has no standing to sue for infringement.

### f. A State Court Default Judgment Purporting To Transfer A Copyright Is Invalid *Per Se* Pursuant to 17 U.S.C. § 201(e)

Although it is not necessary for the Court to reach this issue, assuming that Xcentric's arguments regarding Section 205(d) were somehow incorrect or inapplicable, Mr. Goren's alleged copyright ownership claim nevertheless fails for an entirely independent reason: the process through which Mr. Goren claims to have acquired his rights—by virtue of a default judgment entered in a state-court proceeding filed against the purported author—is expressly barred by the Section 201(e) of the Copyright Act.

Although not fully articulated in the First Amended Complaint, Exhibit C to the FAC shows that Mr. Goren's alleged copyright ownership arises from a default judgment entered in a state-court proceeding in an action styled *Richard A. Goren v. John Doe and Steven DuPont*, Case #2012-4121-H.  According to the Judgment and Permanent Injunction entered in that matter on April 8, 2013 (as later amended in August 2013), the state court entered a default judgment purporting to transfer to Mr. Goren "all rights in and to ownership of the copyright by the author John Doe dba Arabianights-Boston Massachusetts, aka Christian DuPont of the January 31, 2012 Report # 831689 posted on the Ripoff Report website captioned 'Complaint Review: Richard A. Goren' … so as to qualify as a transfer of ownership under 17 U.S.C. § 201(d) and/or under 17 U.S.C. § 204."  This judgment was later amended in August 2013 to include a similar assignment of rights in Report #833025.

However, this purported transfer is invalid as a matter of law pursuant to 17 U.S.C. § 201 (e), which provides:

> **(e) Involuntary Transfer.**— When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, <u>no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title</u>, except as provided under title 11 [of the U.S. Bankruptcy Code].

17 U.S.C. § 201(e) (emphasis added)

Of course, as explained above, when the original author submitted the posts to the Ripoff Report website, he or she granted Xcentric an irrevocable, perpetual exclusive license to "use, copy, perform, display and distribute" the content. Pursuant to 17 U.S.C. § 101, this exclusive license was a "transfer of copyright ownership" from the author to Xcentric. Thus, any dispute as to the validity of subsequent conflicting transfers is controlled by 17 U.S.C. § 205(d).

However, even if this transfer of rights to Xcentric had never occurred, Mr. Goren would still not hold any rights, exclusive or otherwise, to Report #831689. This is so because Section 201(e) expressly prohibits state courts from imposing an involuntary transfer of a copyright in the manner attempted by Mr. Goren. Indeed, Section 201(e) was adopted to prevent exactly the result Mr. Goren is seeking here—involuntary seizure of a copyright to banish unpleasant or controversial speech; "Section 201(e) was originally intended to prevent the Soviet Union from squelching dissidents by confiscating their copyrights, <u>but the plain language of the section prohibits involuntary transfer by any government action</u>." *Rodrigue v. Rodrigue*, 55 F. Supp. 2d 534, 542 (E.D. La. 1999) (emphasis added) (citing Francis M. Nevins, Jr., *When an Author's Marriage Dies; The Copyright-Divorce Connection,* 37 J. Copr. Soc'y U.S.A. 382, 383–84 (1990); 1 Melville Nimmer and David Nimmer, *Nimmer on Copyright* §§ 6A.03[C][2][b] & 10.04), *rev'd on other grounds*, 218 F.3d 432 (5th Cir. 2000).

Both the language and the logic of Section 201(e) are clear—state courts simply do not have authority to issue judgments/orders which involuntarily divest copyright owners of their exclusive rights.  But for Section 201(e), an errant local small claims court default judgment could effectively be used to seize control over and thereby censor virtually any/all online speech.  As noted in *Rodrigue,* this was in fact the core concern Congress intended to prevent when it adopted Section 201(e):

> The purpose of this subsection is to reaffirm the basic principle that the United States copyright of an individual author shall be secured to that author, and cannot be taken away by *any involuntary transfer.* It is the intent of the subsection that the author be entitled, despite any purported expropriation or involuntary transfer, to continue exercising all rights under the United States statute, and that the governmental body or organization may not *enforce or exercise any rights* under this title in that situation.

*Rodrigue*, 55 F. Supp. 2d at 542 (emphasis in original) (quoting 1978 Acts. Senate Report No. 95–989 and House Report No. 95–595; 1978 U.S. Code Cong. and Adm. News, p. 5787).

In sum, Section 201(e) expressly and unequivocally prevents this Court from "giving effect" to the involuntary transfer purported ordered by the state court's default judgment.  Because this transfer was not effective, it conveyed no ownership rights to Mr. Goren.  As such, Mr. Goren has no rights, exclusive or otherwise, in Report #s #831689 or 833025 and thus has no standing to pursue this action for infringement.

### g.  Plaintiffs' Declaratory Relief Claim Should Be Dismissed As Moot

Assuming the copyright infringement claim is dismissed for lack of standing, Mr. Goren's claim for declaratory relief should be dismissed for the same reason, or, alternatively, on the basis that it is moot.  *See Walpin v. Corp. for Nat'l and Cmty. Serv.*, 718 F. Supp. 2d 18 (D.D.C. 2010) (noting, "A court may dismiss as moot a claim for declaratory relief where the claim duplicates or is wholly subsumed by another claim that is dismissed."); *see also Skelly Oil Co. v.*

*Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S. Ct. 876, 878-79, 94 L. Ed. 1194 (1950) (observing the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction).

### III.   CONCLUSION

For the reasons stated above, Mr. Goren is not the owner of the copyright in the works at issue in this case.  Because Mr. Goren is not the copyright owner, he lacks standing to sue Xcentric for infringement, and by extension this means that Article III standing is absent.  As such, this Court has no subject matter jurisdiction over the case.  Mr. Goren's remaining claims are barred by the CDA and are otherwise subject to dismissal for the reasons set forth above.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BOOTH SWEET LLP |
| Dated: September 16 , 2013 | /s/  Dan Booth |
|  | Daniel G. Booth (BBO# 672090)<br>32R Essex Street, Suite 1<br>Cambridge, Massachusetts 02139<br>(617) 250-8602<br>dbooth@boothsweet.com |
|  | JABURG & WILK, P.C. |
|  | Maria Crimi Speth (admitted *pro hac vice*)<br>3200 N. Central Avenue, Suite 2000<br>Phoenix, Arizona 85012<br>(602) 248-1000<br>mcs@jaburgwilk.com |
|  | *Counsel for Defendant Xcentric Ventures, LLC* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this September 16, 2013, I electronically filed the foregoing Motion to Dismiss by using the Court's ECF system, thereby causing a true copy thereof to be served upon counsel of record for Plaintiff as identified on the Notice of Electronic Filing.

/s/  Dan Booth

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)**

The undersigned counsel hereby certifies that on this September 16, 2013, I attempted in good faith to resolve or narrow the issues addressed in the foregoing motion by conferring with Plaintiffs' counsel, but was unable to do so.

/s/  Dan Booth