UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SMALL JUSTICE, LLC and RICHARD A. GOREN,<br><br>Plaintiffs,<br><br>v.<br><br>XCENTRIC VENTURES, LLC,<br><br>Defendant. | Case No. 1:13-CV-11701<br><br>**AFFIDAVIT OF DAVID S. GINGRAS IN SUPPORT OF DEFENDANT XCENTRIC VENTURES, LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

1. My name is David Gingras. I am a United States citizen, a resident of the State of Arizona, am over the age of 18 years, and if called to testify in court or other proceeding I could and would give the following testimony which is based upon my own personal knowledge.

2. I am an attorney licensed to practice law in the States of Arizona and California, I am an active member in good standing with the State Bars of Arizona and California and I am admitted to practice and in good standing with the United States Court of Appeals for the Sixth and Ninth Circuits, the United States District Courts for the District of Arizona, and the United States District Court for the Northern, Central, and Eastern Districts of California.

3. I have represented Xcentric Ventures, LLC ("Xcentric") in numerous matters since 2005 through the present. In addition, from July 2009 through July 2013, I was employed as Xcentric's general counsel. As Xcentric's general counsel, I was closely involved with and personally responsible for various legal decisions relating to

1

the operation of the Ripoff Report website.  Among other things, my duties as general counsel included preparing and occasionally updating the Terms of Service ("TOS") for the Ripoff Report website.

4.     Xcentric operates a website located at www.RipoffReport.com (the "Ripoff Report") which is an online consumer advocacy forum that allows users to post free complaints called "reports" about companies and/or individuals who they feel have wronged them in some manner. Subjects of reports are also allowed to post a free response—known as a "rebuttal"—explaining their side of the story.  Since it was founded in 1998, the Ripoff Report site has received more than 1.6 million unique user-submitted reports and tens of millions of responses/rebuttals.

5.     Before a user is allowed to post anything, they are required to create a free account with the Ripoff Report site.  As part of this process users must affirmatively accept and agree to Xcentric's Terms of Service.  A true and correct copy of Xcentric's current TOS is attached hereto as <u>Exhibit A</u>.  This version of the TOS has been used continuously on the Ripoff Report website since April 8, 2010.

6.     Section 6 of Xcentric's Terms of Service provides as follows:

> **6. Proprietary Rights/Grant of Exclusive Rights**
>
> By posting information or content to any public area of www.RipoffReport.com, <u>you automatically grant, and you represent and warrant that you have the right to grant, to Xcentric an irrevocable, perpetual, fully-paid, worldwide exclusive license to use, copy, perform, display and distribute such information</u> and content and to prepare derivative works of, or incorporate into other works, such information and content, and to grant and authorize sublicenses of the foregoing. (emphasis added)

7. Users who do not agree to Xcentric's Terms of Service are prohibited from posting any content on the Ripoff Report site.

8. In addition to drafting and revising the Terms of Service, as Xcentric's general counsel I was also responsible for, among other things, registering and occasionally updating Xcentric's copyrights with the United States Copyright Office.

9. On March 7, 2012 on behalf of Xcentric, I prepared and submitted a supplemental copyright registration which applied to all new content posted on the Ripoff Report website from January 1, 2012 to March 7, 2012. This registration was a supplement to an earlier original copyright registration that I filed on behalf of Xcentric in 2008 which applied to all third-party content posted on the Ripoff Report website at that time.

10. After submitting the supplemental registration in March 2012 to the U.S. Copyright Office, I received a Certificate of Registration for that work bearing Reg. No. TX 7-491-670. A true and correct copy of the Certificate of Registration for this work is attached hereto as <u>Exhibit B</u>. Again, this registration applied to all new content posted on the Ripoff Report website from January 1, 2012 to March 7, 2012.

11. I have personally reviewed both the original Complaint and the First Amended Complaint ("FAC") filed in this matter by Plaintiffs Small Justice, LLC and Richard Goren (collectively, "Mr. Goren"). I understand from reviewing the pleadings and also from previous correspondence I exchanged with Mr. Goren that this case involves a two reports posted on the Ripoff Report website about Mr. Goren.

12. The first report was posted on January 31, 2012 entitled: "Complaint Review: Richard A. Goren" and the second report was posted on February 2, 2012 entitled: "Complaint Review: Bodoff & Associates, P.C."

13. As is true of all reports posted on the Ripoff Report website, both reports concerning Mr. Goren were automatically assigned a "report number" by Xcentric's servers at the time each report was uploaded to the site. I understand from reviewing the pleadings and also from previous correspondence I exchanged with Mr. Goren that the January 31, 2013 report at issue in this case is Report #831689 and the February 2, 2012 report is Report #833025.

14. A true and correct copy of Report #831689 (which includes three rebuttals) is attached hereto as Exhibit C.

15. A true and correct copy of Report #833025 (which includes no rebuttals) is attached hereto as Exhibit D.

16. As is true of all reports appearing on Xcentric's website, Reports #831689 and #833025 both contain a footer immediately following the report. This footer includes certain information about the location of the report including the date/time it was first posted on the site. This footer also includes the following text: "Ripoff Report has an exclusive license to this report. It may not be copied without the written permission of Ripoff Report."

17. This footer was automatically added to every report appearing on the Ripoff Report website beginning in mid-2010. Since that time, the same footer has

appeared immediately after all existing and all new posts on the Ripoff Report website including Reports #831689 and #833025.

18. Based on a review of Mr. Goren's First Amended Complaint ("FAC") filed in this matter, I am aware that he is presenting a claim for unfair and deceptive acts in trade or comment under Massachusetts state law. I further understand that this claim is based, in part, on the suggestion as alleged in paragraph 86 of the that "XCENTRIC's statements that it was immune under 47 U.S.C. § 230 as a neutral internet Interactive Computer Service Provider constitute unfair and deceptive representations." I also understand that Mr. Goren alleges in paragraph 51 of the FAC that Xcentric made a similar representation to him on June 27, 2013, to wit: "On June 27, 2013, XCENTRIC informed Goren that the injunction could not be enforced against XCENTRIC because as a provider of an interactive internet service it has immunity under the federal Communications Decency Act, 47 U.S.C. §230 (c) (1) and is not liable for defamation published on its Ripoff Report by a third party information content provider."

19. Mr. Goren's allegations that Xcentric engaged in unfair or deceptive trade practices as quoted in paragraphs 51 and 86 of the FAC are based on statements that I made to him regarding this litigation in response to Mr. Goren's demands that Xcentric remove several reports about him from its website.

20. While employed as Xcentric's general counsel, I was first contacted by Mr. Goren via an email he sent to me on November 6, 2012. This email included a 1-page cover letter, a copy of which is attached hereto as Exhibit E and nearly 60 pages of supporting documents relating to Mr. Goren's assertion that a complaint about him

5

posted on the Ripoff Report website was false.  Initially, my understanding was that Mr. Goren wanted to obtain the author's contact information from Xcentric for the purposes of commencing legal action against the author.

21. On May 14, 2013, Mr. Goren sent me a letter demanding that Xcentric remove the report about him based on a default judgment and injunction issued in a state court proceeding entitled *Richard A. Goren v. John Doe, et al.*, Suffolk County Superior Court Case No. CA 12-4121-H.  A copy of this letter (excluding attachments) is attached hereto as Exhibit F.

22. After informing Mr. Goren that I would discuss his request with Xcentric, on June 27, 2013, I sent him an email explaining that Xcentric would not agree to remove the report.  A copy of my email is attached hereto as Exhibit G.  In this email, I explained to Mr. Goren that claims for injunctive relief against a website operator seeking the removal of content posted by a third party were expressly barred by the Communications Decency Act, 47 U.S.C. § 230(c)(1), and I cited various legal authority for that premise.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United State of America that the foregoing is true and correct.

Executed on September 16, 2013.

_____
David Gingras