# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SMALL JUSTICE LLC, RICHARD A. GOREN, and CHRISTIAN DUPONT dba ARABIANIGHTS-BOSTON MASSACHUSETTS,<br><br>       Plaintiffs,<br><br>v.<br><br>XCENTRIC VENTURES LLC,<br><br>       Defendant. | Civil Action No. 1:13-cv-11701-DJC<br><br>**DEFENDANT XCENTRIC VENTURES, LLC'S STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| XCENTRIC VENTURES LLC,<br><br>       Counterclaimant,<br><br>v.<br><br>CHRISTIAN DUPONT,<br><br>       Counterdefendant. | |

Pursuant to Fed. R. Civ. P. 56 and L.R. 56.1, Defendant Xcentric Ventures, LLC ("Xcentric" or "Defendant") hereby submits its Statement of Facts in Support of Motion for Summary Judgment:

1.　　Plaintiff Richard A. Goren is a resident of Massachusetts and a duly licensed member of the Massachusetts bar. (First Amended Complaint ("FAC") ¶ 5).

2.　　Plaintiff Small Justice LLC is a Delaware limited liability company with its principal office in Massachusetts. (*Id*. ¶ 4).

3.　　Upon information, Plaintiff Christian DuPont dba Arabianights-Boston, Massachusetts is a resident of Massachusetts. (*Id*. ¶ 6).

4.     Defendant Xcentric Ventures is an Arizona limited liability company with its principal office in Arizona. Xcentric operates the website RipoffReport.com. (FAC ¶ 7; Affidavit of Adam S. Kunz ("Kunz Aff.") ¶¶ 3-4, attached hereto as "Exhibit G").

5.     Ripoff Report is an online consumer advocacy forum that allows users to post free complaints called "reports" about their experience with a business (FAC ¶ 8; Kunz Aff. ¶ 4). Posting a report on Ripoff Report is completely free, and it is completely free to post a comment or rebuttal. (Kunz. Aff. ¶ 4).

6.     Before posting a report on the Ripoff Report, a user is required to create a free account, where the user is asked to furnish his/her name, address, a handle (or posting pseudonym), an email address, and a telephone number. (FAC ¶ 9; Kunz Aff. ¶ 5).

7.     After creating an account, but before posting a free report, a user is confronted with a screen captioned "Submit your Report." (FAC ¶ 10; Kunz. Aff. ¶ 6). This is the last page before a user posts his or her report. (Kunz Aff. ¶ 6). Beneath the caption appears the title "Terms and Conditions," which is above a box of terms. (FAC ¶ 10; Kunz Aff. 6). The box includes a scrollable list of terms and conditions, which is evident both by the scroll button and by the fact that the immediately viewable portion includes an incomplete mailing address. (*Id.*).

8.     The Terms and Conditions include 12 paragraphs. (FAC ¶ 10; Kunz Aff. ¶ 7). In Paragraph 2, the poster warrants and represents that the posted information is truthful and accurate, and agrees that he/she will not post anything "defamatory, inaccurate, abusive, obscene, profane, offensive, threatening, harassing, racially offensive, or illegal material, or any material that infringes or violates another party's rights." (FAC Exhibit B; Kunz. Aff. ¶ 7). Paragraph 3 states that the poster will defend, indemnify, and hold Xcentric harmless for any action arising out of the poster's use of Ripoff Report. (*Id.*) Paragraph 6 states that, by posting on RipoffReport.com, the poster automatically grants "an irrevocable, fully-paid, worldwide exclusive license to use, copy, perform, display and distribute such information and content and to prepare derivative works of, or incorporate into other works, such information and content, and to grant and authorize sublicenses of the foregoing." (*Id.*) Paragraph 11 states that the poster

agrees that Arizona law will govern the Agreement, that Arizona will serve as the exclusive venue, and that the poster submits to jurisdiction in Arizona. (*Id.*). These terms are available to any visitor of the website, seven days a week, 24 hours a day. (Kunz. Aff. ¶ 7). Aside from the presentation prior to posting, a link to the terms is featured in a prominent bank of links at the bottom of every page on the website. (*Id.*)

9.   Then, before a visitor can submit the report, he/she must click on a box alongside which, in its entirety, reads as follows:

> By posting this report/rebuttal, I attest this report is valid. I am giving Rip-off Report irrevocable rights to post it on the website. I acknowledge that once I post my report, it will not be removed, even at my request. Of course, I can always update my report to reflect new developments by clicking on UPDATE. Further, I agree that by posting this report/rebuttal that the State of Arizona has exclusive jurisdiction over any disputes between me and the operators of Ripoff Report arising out of this posting or the report to which this posting relates.

(FAC ¶ 10; Kunz Aff. ¶ 8). The user will be unable to post his or her comments unless the radio button is checked in agreement. (*Id.*) The visitor can then post his/her comments by clicking on the operative "Post" button at the bottom of the page. (Kunz. Aff. ¶ 8).

10.   Because most complaints on Ripoff Report are about businesses, which generally have more financial resources than consumer complainants, Ripoff Report has adopted a non-removal policy so complaint subjects cannot throw their weight around to silence critics. (FAC ¶ 32; Kunz Aff. ¶ 12). Recognizing that some posters might abuse their right to post on Ripoff Report, Xcentric developed several options that provide a possible remedy to parties who disagree with a report. (FAC ¶ 33; Kunz Aff. ¶ 13). Parties may post a rebuttal on the Ripoff Report for free. (Kunz Aff. ¶ 14). Their rebuttal will be featured prominently next to the original post. (*Id.*)

Parties may also submit their dispute of a report to Ripoff Report's arbitration program. (FAC ¶ 35; Kunz Aff. ¶ 15). Xcentric's independent arbitrator panel currently consists of a retired Arizona Court of Appeals judge and an arbitrator with over twenty-five years of

experience with the AAA. (Kunz Aff. ¶ 15). If the arbitrator determines the post contains false statements of fact, Xcentric will redact those portions of the post, though opinions and true statements will remain. (*Id*.) Xcentric charges $2,000, paying $1,000 of those funds to the independent arbitrator and using the remaining funds to administer the program. (*Id*.) Thus far, Xcentric's monetary investment in the arbitration program exceeds the income from the program; Xcentric could not afford to provide this option if it was unable to recuperate these costs. (*Id*.)

Another option offered by Xcentric is the Consumer Advocacy Program ("CAP"). (FAC ¶ 34; Kunz. Aff ¶ 16). CAP requires the subject company to commit to customer satisfaction (the "Pledge"); to bear responsibility for complaints; and actively, often with the assistance of Xcentric, remediate the consumer's concerns. (Kunz Aff. ¶ 16). CAP also involves Xcentric's staff monitoring new posts about the company. (*Id*.) The Company's failure to honor the Pledge is grounds for termination from CAP. (*Id*.) Upon joining CAP, Xcentric creates a report about the company, advising of the Pledge, which is added to the original complaint. (*Id*.) Like the arbitration program, because CAP requires engagement of Xcentric staff and outside services, Xcentric charges a fee for its service. (FAC ¶ 33; Kunz Aff. ¶¶ 15-16).

11.     On January 31, 2012, an individual registered to post on Ripoff Report under the name Christian DuPont, utilizing the handle "Arabianights." (FAC ¶ 11) After registering, the poster was confronted with the Terms and Conditions in a scrollable box and was required to click on the radio button before posting. (FAC ¶¶ 10-11; Kunz Aff ¶¶ 6-8). Plaintiff "Christian DuPont dba Arabianights" then posted Report #831689 (the "January 31 Post"), alleging that Plaintiff Goren routinely commits crimes in his practice of law, routinely defrauds both his clients and others, routinely commits perjury, and has a history of violent crimes in his personal life. (FAC ¶¶ 11-12).

12.     On February 2, 2012, after following the exact same protocol, Plaintiff "Christian DuPont dba Arabianights" posted Report #833025 (the "February 2 Post"), making similar allegations about Plaintiff Goren. (*Id*. ¶¶ 16-17).

4

### Goren's Superior Court Lawsuit

13.     In November 2012, Goren filed a lawsuit, CA #2012-4121-H, in the Superior Court of Suffolk County against "John Doe dba Arabianights-Boston, Massachusetts" and current-Plaintiff Steven Christian DuPont alleging libel and intentional interference with prospective contractual relations, seeking damages and injunctive relief. (*See* Goren Superior Court Complaint dated November 9, 2012 ("Exhibit A"); *see also* FAC ¶ 40).

14.     According to that Complaint, Goren had filed a 2011 lawsuit on behalf of his client against Steven Christian DuPont, alleging fraud and unfair business practices. (Exhibit A ¶ 5). That case resulted in a sizable judgment against DuPont, including attorneys' fees. (*Id*.) A substantial balance of that judgment remained unpaid at the time that case was filed. (*Id*.).

15.     Goren's Superior Court Complaint alleged that shortly after Goren won the judgment against DuPont, "John Doe dba Arabianights-Boston Massachusetts" posted the January 31 Post on RipoffReport.com. Goren believed the poster was DuPont (Exhibit A ¶¶ 6-10).

16.     When neither John Doe dba Arabianights-Boston, Massachusetts nor Steven Christian DuPont appeared to defend, Goren requested and obtained a default judgment and entry of a preliminary injunction, prohibiting DuPont and "Arabianights-Boston, Massachusetts" from publishing or continuing to publish the January 31 Post on RipoffReport.com. (*See* Goren Superior Court Request for Entry of Default dated Feb. 5, 2013 ("Exhibit B"); Goren Superior Court Ex Parte Application for Default Judgment dated Feb. 22, 2013 ("Exhibit C"), p. 2).

17.     On February 5, 2013, Goren "served notice on the defendants that [he] proposed to waive [his] claims for damages upon entry of an injunction restraining the continuing impairment of [his] reputation . . . ." (Goren Superior Court Motion to Amend Default Judgment & Supporting Affidavit dated July 25, 2013 ("Exhibit D") Aff. ¶ 9). "Despite notice service on [DuPont] at the email and the mailing address he had registered on the Ripoff Report website, defendant Arabianights-Boston, Massachusetts did not oppose entry of judgment." (*Id*.)

18.     On February 22, 2013, Goren filed an Ex-Parte Application for Default Judgment, wherein Goren informed the Superior Court he had dismissed his claims for damages and instead sought entry of a permanent injunction against the defendants. (Exhibit C, p. 2). Goren's proposed judgment asked for "an Order appointing Richard A. Goren, or his designee, as attorney in fact, coupled with an interest, to act in the name and stead of each defendant for the purpose of effectuating the Judgment." (Exhibit C, p. 3).

19.     On March 20, 2013, the Superior Court granted Goren's motion for default judgment, appointing him attorney in fact for the defendants. (*See* Exhibit D, p. 4).

20.     On March 25, 2013, Plaintiff Goren moved the Superior Court to amend the Default Judgment to include language purporting to transfer DuPont's copyrights in the January 31 Post to Goren. (*See* Goren Superior Court Motion to Amend Default Judgment dated March 25, 2013 ("Exhibit E")).

21.     On May 8, 2013, the Superior Court granted Goren's motion and included a purported transfer of copyrights in the January 31 Post from DuPont to Goren. (Exhibit D, p. 4)

22.     On July 3, 2013, Goren then purported to transfer DuPont's copyrights in the January 31 Post to himself, which he then assigned to his current co-plaintiff Small Justice LLC. (FAC ¶ 55).

23.     On June 27, 2013, Xcentric informed Goren that, pursuant to the Communications Decency Act, Xcentric was immune from liability for the posts created by third parties and that he would not be successful should he choose to file a lawsuit against it. (FAC ¶ 51).

**Current Lawsuit Filed Against Xcentric**

24.     On July 16, 2013, Goren filed the current lawsuit against Xcentric in the U.S. District Court for the District of Massachusetts. (Document 1).

25.     On July 25, 2013, Goren went back to the Superior Court and filed a Motion to Amend Default Judgment to include the February 2 Post, which he had inadvertently overlooked. (Exhibit D, p. 3). His proposed amended judgment included reappointment of Goren as DuPont's attorney-in-fact and a transfer of copyrights of both posts from the DuPont to Goren. (*Id.*) In his

6

Motion to Amend Default Judgment, Goren explained that he had recently filed a lawsuit against Xcentric for copyright infringement. (*Id*.) He explained his motives behind the requested transfer of copyrights: "the Ripoff Report cannot be sued for libel or defamation published on its website by third parties but is not immune from copyright infringement." (*Id*. p. 4-5).

26.    On August 16, 2013, the Superior Court granted Goren's Motion to Amend Default Judgment, utilizing Goren's proposed form of judgment. The judgment purported to, *inter alia*, transfer to Goren "all rights in and to ownership of the copyright by the author Christian DuPont dba Arabianights-Boston, Massachusetts . . . of both [posts] on the Ripoff Report . . . ." (Amended Judgment and Permanent Injunction dated August 16, 2013 ("Exhibit F"), ¶ 3). The Amended Judgment, again, appointed Goren "attorney-in-fact, coupled with an interest, with power of substitution" in both the name of Christian DuPont and Arabianights-Boston, Massachusetts as well as in his own name on their behalf. (*Id*. ¶¶ 4-5). The Amended Judgment concluded: "That the acts of said attorney-in-fact shall for all purposes and effects constitute the acts of the defendant Christian DuPont dba Arabianights-Boston, Massachusetts aka Steven DuPont aka Steven Christian DuPont, as if done by said defendant." (*Id*. ¶ 6).

27.    On August 30, 2013, Goren then purported to transfer ownership in DuPont's copyrights in the February 2 Post to himself, which he then assigned to his current co-plaintiff Small Justice LLC. (FAC ¶ 55).

28.    On September 2, 2013, Goren filed his First Amended Complaint in the current action, including the February 2 Post and adding "Christian DuPont dba Arabianights-Boston, Massachusetts" as his co-Plaintiff seeking (COUNT I) declaratory judgment as to copyright ownership, and alleging (COUNT II) copyright infringement, (COUNT III) libel, (COUNT IV) intentional interference with prospective contractual relations, and (COUNT V) unfair and deceptive practices under Mass. G.L. c. 93A. (Document 13).

29.    In response to Xcentric's Motion to Dismiss, this Court allowed COUNT I and COUNT II, regarding copyright ownership and infringement, to survive. (Document 45, Memorandum Order dated Mar. 24, 2014). The Court dismissed COUNT III and COUNT IV for

libel and intentional interference, respectively. (*Id.*) The Court partially dismissed <u>COUNT V</u> for unfair and deceptive practices, only leaving intact the claim that Xcentric's arbitration and corporate advocacy program may constitute unfair or deceptive practices. (*Id.*)

DATED this 13th day of June, 2014.

> Daniel G. Booth (BBO# 672090)
> BOOTH SWEET LLP
> 32R Essex Street, Suite 1
> Cambridge, MA 02139
> Telephone: (617) 250-8602
> Facsimile: (617) 250-8883
> dbooth@boothsweet.com
>
>  /s/ Maria Crimi Speth
> Maria Crimi Speth (admitted *pro hac vice*)
>
> JABURG & WILK, P.C.
> 3200 N. Central Avenue, 20th Floor
> Phoenix, AZ 85012
> mcs@jaburgwilk.com
>
> *Counsel for Defendant Xcentric Ventures, LLC*

## CERTIFICATE OF SERVICE

I, Maria Crimi Speth, hereby certify that I electronically filed the foregoing Motion for Summary Judgment by using the Court's ECF system on this June 13, 2013, thereby causing a true copy of said document to be served electronically upon Plaintiff Richard A. Goren personally and in his capacity as counsel of record for Plaintiffs.

 /s/ Maria Crimi Speth