UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
SMALL JUSTICE LLC,                          )
RICHARD A. GOREN,                           )
and,                                        )
CHRISTIAN DUPONT dba                        )
ARABIANIGHTS-BOSTON                         )
MASSACHUSETTS                               )
                                            )
Plaintiffs,                                 )
                                            ) CIVIL ACTION NO. 1:13-cv-11701-DJC
v.                                          )
                                            )
XCENTRIC VENTURES LLC,                      )
                 Defendant.                 )
_____)

Pursuant to LR56.1 plaintiffs file their Response ("Pl. Resp. Def. SOF") to Defendant's

"Statement of Facts in Support of Motion for Summary Judgment" (Def. SOF).[1] To

assist the Court plaintiffs' responses are in bold.


    1.      Plaintiff Richard A. Goren is a resident of Massachusetts and a duly

licensed member of the Massachusetts bar. (First Amended Complaint ("FAC") ¶ 5).

        **Response: Admitted.**

    2.      Plaintiff Small Justice LLC is a Delaware limited liability company with

its principal office in Massachusetts. (*Id*. ¶ 4).

        **Response: Admitted.**

    3.      Upon information, Plaintiff Christian DuPont dba Arabianights-Boston,

Massachusetts is a resident of Massachusetts. (*Id*. ¶ 6).

---

[1] Plaintiffs also file a statement of additional material facts as to which they contend there is no genuine
dispute ("Pl. SOF") enabling the Court to grant them summary judgment pursuant to Fed. R. Civ. P. 56
(f)(1).  Pl. SOF is supported by the Affidavit of Richard A. Goren of even date, the Affidavit of Spencer
Neitzke dated July 28, 2014  and other materials of record as well as matters of which the Court is
requested to take judicial notice.

> **Response: Objection.   Paragraph 6 of the First Amended Complaint avers: "Christian DuPont dba Arabianights-Boston Massachusetts is a natural person who represented to the defendant that he has an address of 46 Rutland Square, Boston Massachusetts 02116."**
>
> **For purposes of this motion for summary judgment, not disputed.**

4.      Defendant Xcentric Ventures is an Arizona limited liability company with its principal office in Arizona. Xcentric operates the website RipoffReport.com. (FAC ¶ 7; Affidavit of Adam S. Kunz ("Kunz Aff.") ¶¶ 3-4, attached hereto as "Exhibit G").

> **Response: Admitted.**

5.      Ripoff Report is an online consumer advocacy forum that allows users to post free complaints called "reports" about their experience with a business (FAC ¶ 8; Kunz Aff. ¶ 4). Posting a report on Ripoff Report is completely free, and it is completely free to post a comment or rebuttal. (Kunz. Aff. ¶ 4).

> **Response: Objection Affiant lacks personal knowledge of the time periods in question.**
>
> **Defendant has represented to this Court under oath as follows:**
>
> > **Ripoff Report is "an interactive website" which holds itself out as "an online consumer advocacy forum that allows users to post free complaints called 'reports' about companies and/or individuals who they feel have wronged them in some manner." David Gingras Affidavit, dated August 8, 2013 (Paper 8.1) ("Gingras Aff.") ¶4; David Gingras Affidavit dated September 16, 2013 (Paper 15) ("Second Gingras Aff.") ¶4.**
>
> **Objection. Xcentric's Answer to the FAC admitted ¶8 which states:**
>
> > **Ripoff Report is "an interactive website" which holds itself out as "an online consumer advocacy forum that allows users to post free complaints called 'reports' about companies and/or individuals who they feel have wronged them in some manner."**

6.      Before posting a report on the Ripoff Report, a user is required to create a free account, where the user is asked to furnish his/her name, address, a handle (or posting pseudonym), an email address, and a telephone number. (FAC ¶ 9; Kunz Aff. ¶ 5).

**Response: Objection Affiant lacks personal knowledge of the time periods in question. But not disputed.**

7.      After creating an account, but before posting a free report, a user is confronted with a screen captioned "Submit your Report." (FAC ¶ 10; Kunz. Aff. ¶ 6).

**Response to first sentence: Objection Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated. Kunz's affidavit is contradicted by Affidavit of David Gingras dated March 3, 2014 (Paper 37) "Third Gingras Aff." ¶2 n. 1; the affidavit of Justin Crossman, dated August 12, 2010, filed in the case of *Russo et al v. Xcentric Ventures LLC et al*, US District Court for the Northern District of Georgia, Atlanta Division as paper 30-4 in support of Xcentric's Motion for Summary Judgment (Paper 30) ("Crossman Aff.") ¶ 4 (Paper 41-1 in this case); Affidavit of Ben Smith, dated May 24, 2010, filed in the case of *Asia Economic Institute LLC et al v. Xcentric Ventures LLC et al,* US District Court for the Central District of California, CA 10-cv-01360 on September 27, 2010 in support of Xcentric's Motion for Summary Judgment ("Smith Aff.") ¶ 4 (Paper 41-2 in this case).**

This is the last page before a user posts his or her report. (Kunz Aff. ¶ 6).

> **Response: Objection Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated. Kunz' affidavit is contradicted by Crossman Aff. ¶10 Exhibit E thereto (a screenshot of the last page step five) and by Smith Aff. (same).**

Beneath the caption appears the title "Terms and Conditions," which is above a box of terms. (FAC ¶ 10; Kunz Aff. 6).

> **Response: Objection Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated. Kunz' affidavit is contradicted by Crossman Aff. ¶10 Exhibit E thereto (a screenshot of the last page step five) and by Smith Aff. (same).**

The box includes a scrollable list of terms and conditions, which is evident both by the scroll button and by the fact that the immediately viewable portion includes an incomplete mailing address. (*Id.*).

> **Response: Objection Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated. The statement is not one of fact but a conclusory opinion. The statement "that that the immediately viewable portion includes an incomplete mailing address," is contradicted by the Gingras Aff. ¶5; Affidavit of David Gingras dated March 3, 2014 (Paper 37)**

4

**("Third Gingras Aff.") ¶2 n.1; Crossman Aff. ¶10 Exhibit E thereto (a**

**screenshot of the last page step five, with a complete mailing address) and by**

**Smith Aff. (same).**

**The statement "that that the immediately viewable portion includes an**

**incomplete mailing address," is immaterial because the user is neither**

**directed to scroll down "to see important terms," nor prevented from**

**clicking "continue" without scrolling.**

8.      The Terms and Conditions include 12 paragraphs. (FAC ¶ 10; Kunz
Aff. ¶ 7).

**Response to first sentence: Objection Affiant lacks personal**

**knowledge of the time periods in question; the affidavit does not show that**

**Mr. Kunz is competent to testify on the matters stated. Xcentric's "Terms**

**and Conditions" does not consist of 12 paragraphs.  In ¶7 of his June 14,**

**2014 affidavit Mr. Kunz would "stipulate" to Exhibit B to First Amended**

**Complaint which is not an admission by plaintiffs.  The FAC ¶10 and Exhibit**

**B to the FAC was the page view on August 29, 2013.**

**According to the Gingras Aff. ¶5, Exhibit A thereto, and the Second**

**Gingras Aff. ¶5, Exhibit A thereto, the 12 paragraph Exhibit is Xcentric's**

**"Terms of Service" as of January and February 2012 and paragraph 1 of the**

**then extant "Terms of Service" is "Ripoff Report Membership Terms &**

**Conditions."**

**Objection, while its motion for summary judgment argues that the**

**contract was bound by the plaintiff DuPont's acceptance of Xcentric's**

**"Terms and Conditions," its Counterclaim against the plaintiff DuPont**

**(Paper 49) alleges that DuPont is contractually bound to Xcentric's "Terms**

**of Service." (Id. at 12-16). While not judicially estopped Xcentric cannot in good faith deny its position that Xcentric's "Terms of Service" that were extant at all relevant times is as set forth in the Gingras Aff. and Second Gingras Aff.**

In Paragraph 2, the poster warrants and represents that the posted information is truthful and accurate, and agrees that he/she will not post anything "defamatory, inaccurate, abusive, obscene, profane, offensive, threatening, harassing, racially offensive, or illegal material, or any material that infringes or violates another party's rights." (FAC Exhibit B; Kunz. Aff. ¶ 7).

**Response to second sentence: Objection, Xcentric's "Membership Terms & Conditions" is but a single paragraph and it is numbered "1" of the operative twelve paragraph Terms of Service. Objection, Paragraph 2 of Xcentric's Terms of Service speaks for itself.**

Paragraph 3 states that the poster will defend, indemnify, and hold Xcentric harmless for any action arising out of the poster's use of Ripoff Report. (*Id.*)

**Response to third sentence: Objection, Xcentric's "Terms & Conditions" is but a single paragraph and it is numbered "1" of the operative twelve paragraph Terms of Service. Objection, Paragraph 3 of Xcentric's Terms of Service is entitled "Online Content." Paragraph 4 of Xcentric's Terms of Service is entitled "Indemnity."**

Paragraph 6 states that, by posting on RipoffReport.com, the poster automatically grants "an irrevocable, fully-paid, worldwide exclusive license to use, copy, perform, display and distribute such information and content and to prepare derivative works of, or incorporate into other works, such information and content, and to grant and authorize sublicenses of the foregoing." (*Id.*)

**Response to fourth sentence: Objection, Xcentric's "Terms & Conditions" is but a single paragraph and it is numbered "1" of the operative twelve paragraph Terms of Service. Objection, Paragraph 6 of Xcentric's Terms of Service is entitled "Proprietary Rights/Grant of Exclusive Rights." Objection, for incompleteness. See plaintiffs' Statement of Additional Material Facts ("Pl. SOF")¶33.**

Paragraph 11 states that the poster agrees that Arizona law will govern the Agreement, that Arizona will serve as the exclusive venue, and that the poster submits to jurisdiction in Arizona. (*Id.*).

**Response to fifth sentence: Objection, Xcentric's "Terms & Conditions" is but a single paragraph and it is numbered "1" of the operative twelve paragraph Terms of Service. Objection, Paragraph 11 of Xcentric's Terms of Service is entitled "General Provisions." Objection, for incompleteness. See plaintiffs' Statement of Additional Material Facts ("Pl. SOF")¶38.**

**Plaintiffs do not dispute that paragraph 11, General Provisions includes a choice of law and venue provision as described in the fifth sentence but contend the fifth sentence is not material.**

These terms are available to any visitor of the website, seven days a week, 24 hours a day. (Kunz. Aff. ¶ 7).

**Response to sixth sentence: Objection, Xcentric's "Terms & Conditions" is but a single paragraph and it is numbered "1" of the operative twelve paragraph Terms of Service.**

**Objection, lack of foundation as to personal knowledge of what was "available" on the Ripoff Report website in January and February 2012.**

> **Objection, according to the five step process attested to by Xcentric there is no immediately visible reference to Xcentric's Terms of Service and the only immediately visible reference to Xcentric's Terms & Conditions is the following:**

> **1. Ripoff Report Membership Terms & Conditions**
>> **To use this service, you must be at least 14 years old.**
>> **www.RipoffReport.com ("ROR") is an online forum created to help keep consumers informed. ROR is operated by Xcentric Ventures, LLC located at:**
>> **Xcentric Ventures, LLC**
>> **Ripoff Report**
>> **P.O. Box 310**
>> **Tempe, AZ 85280**
>> **(602)359-4357**

> **Exhibit E, Crossman Aff.; Exhibit E, Smith Aff. (same)**

Aside from the presentation prior to posting, a link to the terms is featured in a prominent bank of links at the bottom of every page on the website. (*Id.*)

> **Response to seventh sentence: Objection, Xcentric's "Terms & Conditions" is but a single paragraph and it is numbered "1" of the operative twelve paragraph Terms of Service.**

> **Objection, lack of foundation as to personal knowledge of what was "available" on the Ripoff Report website in January and February 2012.**

> **Objection, according to the screenshots Exhibits A through E of both the Crossman Aff. and the Smith Aff. at the bottom of the page were 11 underlined terms: (i) Home; (ii) File a Report; (iii) Consumer Resources; (iv) Search; (v) Link to Ripoff Report; (vi) Privacy Policy; (vii) Terms of Service;**

**(viii) <u>FAQ</u>; (ix) <u>About Us</u>; (x) <u>Contact Us</u>; and, (xii) <u>Why Ripoff Report will not release author information!</u>.**

**Objection, there was no reference to "Terms and Conditions."**

**Objection as to the statement of prominence because: (i) there are no explicit identification of these underline terms as links or so-called hyperlinks; (ii) there is no notice the importance of the terms that were not immediately visible; (iii) there is no direction to the visitor to find and read the Terms of Service; and, (iv) all of these "links" are at the bottom of the page and are not set off from other text on the page by larger size.**

**Objection, whether a reference or link is "prominent" is not a statement of fact but a conclusion of law. There is no reference to, or assertion of compliance with, either the Federal Trade Commission Dot Com disclosure rules or the Massachusetts regulations of internet advertising. On none of these screenshots is there is any notice of the importance of the Terms of Service that were not immediately visible.**

9.     Then, before a visitor can submit the report, he/she must click on a box alongside which, in its entirety, reads as follows:

> By posting this report/rebuttal, I attest this report is valid. I am giving Rip-off Report irrevocable rights to post it on the website. I acknowledge that once I post my report, it will not be removed, even at my request. Of course, I can always update my report to reflect new developments by clicking on UPDATE. Further, I agree that by posting this report/rebuttal that the State of Arizona has exclusive jurisdiction over any disputes between me and the operators of Ripoff Report arising out of this posting or the report to which this posting relates.

(FAC ¶ 10; Kunz Aff. ¶ 8).

9

**Response to the first sentence: Objection Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated.  According to Exhibit E Crossman Aff. and Exhibit E Smith Aff. the member had to have clicked on a box alongside which in its entirety was the following text:**

> **By posting this report/rebuttal, I attest this report is valid.  I am giving Rip-off Report irrevocable rights to post it on the website.  I acknowledge that once I post my report, it will not be removed, even at my request. Of course, I can always update my report to reflect new developments by clicking on UPDATE. Further, I agree that by posting the report/rebuttal that the State of Arizona has exclusive jurisdiction over any disputes between me and the operators of Rip-off Report arising out of this posting.**

> **The Kunz affidavit reflects an apparent change in the wording as it adds at the very end  "or the report to which this posting relates."**

The user will be unable to post his or her comments unless the radio button is checked in agreement. (*Id.*)

**Response to the second sentence: Objection Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated. According to Exhibit E Crossman Aff. and Exhibit E Smith Aff. a member must check the box but there is no visible indication, notice or warning that by checking the box the member is agreeing to accept Xcentric's Terms of Service.**

**Objection there is no visible indication, notice or warning that by checking the box the member is agreeing to anything other than the paragraph alongside the box to be checked.**

The visitor can then post his/her comments by clicking on the operative "Post" button at the bottom of the page. (Kunz. Aff. ¶ 8).

**Response to the third sentence: Objection Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated.**

**According to Exhibit E Crossman Aff. and Exhibit E Smith Aff. and according to the affidavit of Richard A. Goren of even date (as to the Ripoff Report website as of August 29, 2013) the author clicks on a button labeled "Continue" and his work is thereupon posted.**

10.    Because most complaints on Ripoff Report are about businesses, which generally have more financial resources than consumer complainants, Ripoff Report has adopted a non-removal policy so complaint subjects cannot throw their weight around to silence critics. (FAC ¶ 32; Kunz Aff. ¶ 12).

**Response to the first sentence: Objection, Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated. Objection, whether businesses generally have greater or more financial resources than consumer complainants is not a statement of fact; and, the statement is immaterial.**

**Plaintiffs do not dispute that Ripoff Report's published policy is it will not remove a report from its website even if the report is adjudged defamatory or even if the author requests the report to be taken down.**

**Plaintiffs do not dispute Xcentric touts that "Ripoff Report has adopted a strict non-removal policy so complaint subjects cannot throw their weight around to silence critics." Kunz Aff.¶12.**

**Plaintiffs contend Xcentric does not adhere to its published policy and that for a fee complaint subjects can "restore their reputation."**

Recognizing that some posters might abuse their right to post on Ripoff Report, Xcentric developed several options that provide a possible remedy to parties who disagree with a report. (FAC ¶ 33; Kunz Aff. ¶ 13).

**Response to the second sentence: Objection, Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated.**

**Objection, Xcentric's motives, *i.e.,* the "why," for its undisputed alternative commercial fee based solutions for the subjects of false and/or defamatory reports posted on its Ripoff Report website are for the fact finder at trial.**

**Objection, Xcentric's motivation(s) underlying its adoption and administration of these commercial fee based solutions for the subjects of false and/or defamatory reports are not material to Xcentric's contention that it is entitled to summary judgment, as a matter of law, for its "exercise[ of] editorial control over the [libelous] content at issue." (Paper 55, Motion at 17).**

**It is undisputed that XCENTRIC offers alternative commercial fee based solutions for the subjects of false and/or defamatory reports posted on its Ripoff Report website.  See FAC ¶33.**

Parties may post a rebuttal on the Ripoff Report for free. (Kunz Aff. ¶ 14).

> **Response to the third sentence: Objection, Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated.**
>
> **Objection, paragraph 14 of the Kunz affidavit is contradicted by, or is inconsistent with, paragraphs 7 and 8 of the Kunz affidavit in which it is asserted a person desiring to post a "rebuttal" must register and agree to the Ripoff Report terms and conditions.  In other words, Xcentric contends the author of a rebuttal must assign all the exclusive rights of copyright to his or her work and agree to indemnify Xcentric.**

Their rebuttal will be featured prominently next to the original post. (*Id.*)

> **Response to the fourth sentence: Objection, Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated.**
>
> **Objection whether a rebuttal is "prominently featured," is a matter of opinion and not fact.**

Parties may also submit their dispute of a report to Ripoff Report's arbitration program. (FAC ¶ 35; Kunz Aff. ¶ 15).

> **Response to the fifth sentence: Objection, Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated.**
>
> **Plaintiffs do not dispute that Xcentric solicits subjects of false and/or defamatory Ripoff Reports to submit their complaint "the matter to …[ XCENTRIC's] V.I.P. Arbitration process.**

13

Xcentric's independent arbitrator panel currently consists of a retired Arizona Court of Appeals judge and an arbitrator with over twenty-five years of experience with the AAA. (Kunz Aff. ¶ 15).

> **Response to the sixth sentence: Objection, Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated.**

> **Objection, the composition of the arbitrator panel is not material to Xcentric's motion for summary judgment.**

If the arbitrator determines the post contains false statements of fact, Xcentric will redact those portions of the post, though opinions and true statements will remain. (*Id.*)

> **Response to the seventh sentence: Objection, Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated.**

> **Objection, according to Exhibit 3, Kunz affidavit, the VIP Arbitration Rules effective September 2012, a maximum of ten false statements of fact will be redacted.**

> **Objection, according to Exhibit 3, Kunz affidavit, the VIP Arbitration Rules effective September 2012, a libelous statement that in the opinion of the arbitrator is not capable of being objectively verified as true or false will not be redacted.**

Xcentric charges $2,000, paying $1,000 of those funds to the independent arbitrator and using the remaining funds to administer the program. (*Id.*)

**Response to the eighth sentence: Objection, Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated.**

**Objection, lack of foundation as to use of the funds.**

**Plaintiffs do not dispute that Xcentric charges fees for its arbitration program.**

Thus far, Xcentric's monetary investment in the arbitration program exceeds the income from the program; Xcentric could not afford to provide this option if it was unable to recuperate these costs. (*Id.*)

**Response to the ninth sentence: Objection, Affiant lacks personal knowledge of the time periods in question; the affidavit does not show that Mr. Kunz is competent to testify on the matters stated.**

**Objection, lack of foundation as to Xcentric's investment.**

**Objection, lack of foundation as to Xcentric's income from the program as income should include not just the fees paid by a party submitting to the arbitration program; income should include advertising revenues and CAP revenues.**

Another option offered by Xcentric is the Consumer Advocacy Program ("CAP"). (FAC ¶ 34; Kunz. Aff ¶ 16).

**Response to the tenth sentence: Admitted.**

**Objection, Plaintiffs contend, and for purposes of its summary judgment motion XCentric seems to adopt plaintiffs' FAC ¶ 34, to wit:**

**XCENTRIC solicits the subjects of a false and/or defamatory Ripoff Report to "join" XCENTRIC's "Corporate Advocacy Program." The injured party is encouraged to submit an application and registration via the Ripoff Report website for XCENTRIC's "Corporate Advocacy Program" whereby for a fee the injured party may be assisted to "restore their reputation." XCENTRIC's targeted advertisement to those parties defamed on its website touts that:**

**"to make your search engine listings change from a negative to a positive all you need to know is this: by becoming a member of the Corporate Advocacy Program, no matter how you search your name on search engines, it will all look as it should. Positive."**

**Fees "for enrolling in the program are based on the number of Reports" and/or "the number of physical locations you have."**

CAP requires the subject company to commit to customer satisfaction (the "Pledge"); to bear responsibility for complaints; and actively, often with the assistance of Xcentric, remediate the consumer's concerns. (Kunz Aff. ¶ 16).

**Response to the eleventh sentence:**

**Objection, the CAP program documents do not use the word: "Pledge."**

**and**

> **Objection, statement is immaterial where the author of the libel was not a customer of the party defamed by the libel.**

CAP also involves Xcentric's staff monitoring new posts about the company. (*Id*.)

> **Response to the twelfth sentence: Objection, the affidavit does not show that Mr. Kunz is competent to testify on the matters stated.**

> **Plaintiffs do not dispute that as its Exhibit 4 discloses, subject to CAP members payment of their monthly fees, Xcentric will "hold[] each new Report [about a CAP member] without posting it" and if the author of the new Report does not satisfy a number of specified conditions, the new Report will not be published.**

The Company's failure to honor the Pledge is grounds for termination from CAP. (*Id*.)

> **Response to the thirteenth sentence: Objection, the affidavit does not show that Mr. Kunz is competent to testify on the matters stated.**

> **Objection, the CAP program documents do not use the word: "Pledge."**

Upon joining CAP, Xcentric creates a report about the company, advising of the Pledge, which is added to the original complaint. (*Id*.)

> **Response to the fourteenth sentence: Admitted that Xcentric creates a report that is added to the original report.**

> **Objection, the CAP program documents do use the word: "Pledge."**

> **Objection, according to the Kunz affidavit Exhibit 4**

> **"Xcentric will update the title of every Report about … [the CAP member] (the "Update"). The Update will be a hyperlink to a truthful, positive Ripoff Report Investigation/Interview/…[CAP member's] commitment the content of which will be submitted by the … [CAP member] to Xcentric and approved with suggestions by Xcentric. This positive link will be located after the title of each report…".**

Like the arbitration program, because CAP requires engagement of Xcentric staff and outside services, Xcentric charges a fee for its service. (FAC ¶ 33; Kunz Aff. ¶¶ 15-16).

> **Response to the fifteenth sentence:**
>
> **Objection, Xcentric's motives, *i.e.,* the "why," for its undisputed alternative commercial fee based solutions for the subjects of false and/or defamatory reports posted on its Ripoff Report website are for the fact finder at trial.**
>
> **Objection, Xcentric's motivation(s) underlying its adoption and administration of these commercial fee based solutions for the subjects of false and/or defamatory reports are not material to Xcentric's contention that it is entitled to summary judgment, as a matter of law, for its "exercise[ of] editorial control over the [libelous] content at issue." (Paper 55, Motion at 17).**

11.    On January 31, 2012, an individual registered to post on Ripoff Report under the name Christian DuPont, utilizing the handle "Arabianights." (FAC ¶ 11)

> **Response: Admitted but incomplete. The pseudonym utilized by the plaintiff DuPont was "Arabianights-Boston Massachusetts." See Pl. SOF¶ [ ].**

After registering, the poster was confronted with the Terms and Conditions in a scrollable box and was required to click on the radio button before posting. (FAC ¶¶ 10-11; Kunz Aff ¶¶ 6-8).

> **Response to the second sentence: Plaintiffs admit that as part of the step 5 process the plaintiff DuPont necessarily had to click "continue," before his work was posted.**

Plaintiff "Christian DuPont dba Arabianights" then posted Report #831689 (the "January 31 Post"), alleging that Plaintiff Goren routinely commits crimes in his practice of law, routinely defrauds both his clients and others, routinely commits perjury, and has a history of violent crimes in his personal life. (FAC ¶¶ 11-12).

> **Response to the second sentence: Admitted.**

12.     On February 2, 2012, after following the exact same protocol, Plaintiff "Christian DuPont dba Arabianights" posted Report #833025 (the "February 2 Post"), making similar allegations about Plaintiff Goren. (*Id*. ¶¶ 16-17).

> **Response: Admitted.**

> **Goren's Superior Court Lawsuit**

13.     In November 2012, Goren filed a lawsuit, CA #2012-4121-H, in the Superior Court of Suffolk County against "John Doe dba Arabianights-Boston, Massachusetts" and current-Plaintiff Steven Christian DuPont alleging libel and intentional interference with prospective contractual relations, seeking damages and injunctive relief. (*See* Goren Superior Court Complaint dated November 9, 2012 ("Exhibit A"); *see also* FAC ¶ 40).

> **Response: Admitted.**

14.     According to that Complaint, Goren had filed a 2011 lawsuit on behalf of his client against Steven Christian DuPont, alleging fraud and unfair business practices. (Exhibit A ¶ 5).

**Response to the first sentence: Objection, ¶5 of Goren's November 2012 Verified Complaint alleged he had filed a lawsuit in 2009 on behalf of his client.**

That case resulted in a sizable judgment against DuPont, including attorneys' fees. (*Id*.) A substantial balance of that judgment remained unpaid at the time that case was filed. (*Id*.).

**Response to the second and third sentences: Admitted.**

15.     Goren's Superior Court Complaint alleged that shortly after Goren won the judgment against DuPont, "John Doe dba Arabianights-Boston Massachusetts" posted the January 31 Post on RipoffReport.com. Goren believed the poster was DuPont (Exhibit A ¶¶ 6-10).

**Response: Admitted.**

16.     When neither John Doe dba Arabianights-Boston, Massachusetts nor Steven Christian DuPont appeared to defend, Goren requested and obtained a default judgment and entry of a preliminary injunction, prohibiting DuPont and "Arabianights-Boston, Massachusetts" from publishing or continuing to publish the January 31 Post on RipoffReport.com. (*See* Goren Superior Court Request for Entry of Default dated Feb. 5, 2013 ("Exhibit B"); Goren Superior Court Ex Parte Application for Default Judgment dated Feb. 22, 2013 ("Exhibit C"), p. 2).

**Response: Admitted. But See Pl. SOF¶¶52, 54, 55, 57, 58, 59.  Only after the Superior Court had granted Goren's Application for Default Judgment was the Order of dismissal of  Goren's claims for money damages entered. (See Paper 56-4, defendant's Exhibit D); Pl. SOF¶57.**

**OBJECTION: Because Xcentric possesses none of the exclusive rights of Copyright it has no standing to assert the affirmative defense adherent only to individual authors of 17 U.S.C. § 201(e) "INVOLUNTARY TRANSFER."**

17.     On February 5, 2013, Goren "served notice on the defendants that [he] proposed to waive [his] claims for damages upon entry of an injunction restraining the continuing impairment of [his] reputation . . . ." (Goren Superior Court Motion to Amend Default Judgment & Supporting Affidavit dated July 25, 2013 ("Exhibit D") Aff. ¶ 9). "Despite notice service on [DuPont] at the email and the mailing address he had registered on the Ripoff Report website, defendant Arabianights-Boston, Massachusetts did not oppose entry of judgment." (*Id.*)

**Response: Admitted. But See Pl. SOF¶¶52, 54, 55, 57, 58, 59.  Only after the Superior Court had granted Goren's Application for Default Judgment was the Order of dismissal of  Goren's claims for money damages entered. (See Paper 56-4, defendant's Exhibit D); Pl. SOF¶57.**

**OBJECTION: Because Xcentric possesses none of the exclusive rights of Copyright it has no standing to assert the affirmative defense adherent only to individual authors of 17 U.S.C. § 201(e) "INVOLUNTARY TRANSFER."**

18.     On February 22, 2013, Goren filed an Ex-Parte Application for Default Judgment, wherein Goren informed the Superior Court he had dismissed his claims for damages and instead sought entry of a permanent injunction against the defendants. (Exhibit C, p. 2).

**Response: Objection as the statement is inaccurate and misleading.  Only after the Superior Court had granted Goren's Application for Default Judgment was the Order of dismissal of  Goren's claims for money damages entered. (See Paper 56-4, defendant's Exhibit D); Pl. SOF¶57.**

**OBJECTION: Because Xcentric possesses none of the exclusive rights of Copyright it has no standing to assert the affirmative defense adherent only to individual authors of 17 U.S.C. § 201(e) "INVOLUNTARY TRANSFER."**

19.     Goren's proposed judgment asked for "an Order appointing Richard A. Goren, or his designee, as attorney in fact, coupled with an interest, to act in the name and stead of each defendant for the purpose of effectuating the Judgment." (Exhibit C, p. 3).

**Response: Plaintiffs do not dispute that on page 3 of his February 22, 2012 Application for Default Judgment, Goren described the Order he sought as specified in paragraph 19.**

20.     On March 20, 2013, the Superior Court granted Goren's motion for default judgment, appointing him attorney in fact for the defendants. (*See* Exhibit D, p. 4).

**Response: Admitted.**

21.     On March 25, 2013, Plaintiff Goren moved the Superior Court to amend the Default Judgment to include language purporting to transfer DuPont's copyrights in the January 31 Post to Goren. (*See* Goren Superior Court Motion to Amend Default Judgment dated March 25, 2013 ("Exhibit E")).

**Response: Plaintiffs do not dispute that Goren's March 25, 2013 Motion was allowed and that on May 8, 2013 the Superior Court entered an amended judgment which is Exhibit A to the July 13, 2013 Complaint (Paper 1 at 10-15). Objection to defendant's characterization of the Superior Court's Order.**

22.     On May 8, 2013, the Superior Court granted Goren's motion and included a purported transfer of copyrights in the January 31 Post from DuPont to Goren. (Exhibit D, p. 4)

>**Response: Plaintiffs do not dispute that on May 8, 2013 the Superior Court entered an amended judgment which is Paper 29-4 and also Exhibit A to the July 13, 2013 Complaint (Paper 1 at 10-15).**
>
>**OBJECTION to defendant's characterization of the Superior Court's Order.**

22.     On July 3, 2013, Goren then purported to transfer DuPont's copyrights in the January 31 Post to himself, which he then assigned to his current co-plaintiff Small Justice LLC. (FAC ¶ 55).

>**Response: Objection, statement is not supported by the cited material.**
>
>**Plaintiffs' FAC ¶55 states:**
>>**On July 3, 2013 and on August 30, 2013, the author of the January 31, 2012 Ripoff Report and the February 2, 2012 Ripoff Report assigned all his right, title and interest in and to both the January 31, 2012 Ripoff Report and the February 2, 2012 Ripoff Report to Goren who thereupon assigned same to SMALL JUSTICE LLC.**

23.     On June 27, 2013, Xcentric informed Goren that, pursuant to the Communications Decency Act, Xcentric was immune from liability for the posts created by third parties and that he would not be successful should he choose to file a lawsuit against it. (FAC ¶ 51).

>**Response: Objection, statement is not supported by the cited material.**
>
>**Plaintiffs' FAC ¶51 states:**
>>**On June 27, 2013, XCENTRIC informed Goren that the injunction could not be enforced against XCENTRIC because as a provider of an interactive internet service it has immunity under the federal Communications Decency Act, 47 U.S.C. §230 (c) (1) and is not liable for defamation published on its Ripoff Report by a third party information content provider.**

**Defendant's Answer (Paper 49 ) FAC ¶51 is Admitted.**

**Current Lawsuit Filed Against Xcentric**

24.     On July 16, 2013, Goren filed the current lawsuit against Xcentric in the U.S. District Court for the District of Massachusetts. (Document 1).

**Response: Admitted.**

25.     On July 25, 2013, Goren went back to the Superior Court and filed a Motion to Amend Default Judgment to include the February 2 Post, which he had inadvertently overlooked. (Exhibit D, p. 3).

**Response to first sentence. Plaintiffs admit that on August 8, 2013 Goren's July 25, 2013 Motion was filed and that the motion referenced an inadvertent failure to include the February 2d work.**

His proposed amended judgment included reappointment of Goren as DuPont's attorney-in-fact and a transfer of copyrights of both posts from the DuPont to Goren. (*Id.*)

**Response to second sentence. Objection, statement is not supported by the cited material. On August 16, 2013, the Superior Court entered an Amended Judgment and Permanent Injunction, Exhibit C to First Amended Complaint (Paper 13-3).**

**Objection, statement purports to characterizes the August 16, 2013 Judgment.**

In his Motion to Amend Default Judgment, Goren explained that he had recently filed a lawsuit against Xcentric for copyright infringement. (*Id.*)

**Response to third sentence. Objection, statement is not supported by the cited material. It was Page 4 of Goren's July 25, 2013 Motion and not page 3 that the motion referenced this action.**

He explained his motives behind the requested transfer of copyrights: "the Ripoff Report cannot be sued for libel or defamation published on its website by third parties but is not immune from copyright infringement." (*Id*. p. 4-5).

**Response to fourth sentence. Objection, the statement improperly purports to attribute a motive to the quoted statement.**

26.    On August 16, 2013, the Superior Court granted Goren's Motion to Amend Default Judgment, utilizing Goren's proposed form of judgment.

**Response to first sentence. Objection, statement that the Superior Court utilized Goren's proposed form of judgment is not supported by the cited material.**

The judgment purported to, inter alia, transfer to Goren "all rights in and to ownership of the copyright by the author Christian DuPont dba Arabianights-Boston, Massachusetts . . . of both [posts] on the Ripoff Report . . . ." (Amended Judgment and Permanent Injunction dated August 16, 2013 ("Exhibit F"), ¶ 3).

**Response to second sentence. Objection, statement is not supported by the cited material. On August 16, 2013, the Superior Court entered an Amended Judgment and Permanent Injunction, Exhibit C to First Amended Complaint (Paper 13-3).**

**Objection, statement purports to characterize the August 16, 2013 Judgment.**

The Amended Judgment, again, appointed Goren "attorney-in-fact, coupled with an interest, with power of substitution" in both the name of Christian DuPont and Arabianights-Boston, Massachusetts as well as in his own name on their behalf. (*Id*. ¶¶ 4-5).

**Response to third sentence. Objection, statement purports to characterize the August 16, 2013 Judgment.**

25

The Amended Judgment concluded: "That the acts of said attorney-in-fact shall for all purposes and effects constitute the acts of the defendant Christian DuPont dba Arabianights-Boston, Massachusetts aka Steven DuPont aka Steven Christian DuPont, as if done by said defendant." (*Id*. ¶ 6).

**Response to fourth sentence. Admitted.**


27.     On August 30, 2013, Goren then purported to transfer ownership in DuPont's copyrights in the February 2 Post to himself, which he then assigned to his current co-plaintiff Small Justice LLC. (FAC ¶ 55).

**Response.    Objection, statement is not supported by the cited material.**

**Plaintiffs' FAC ¶55 states:**
> **On July 3, 2013 and on August 30, 2013, the author of the January 31, 2012 Ripoff Report and the February 2, 2012 Ripoff Report assigned all his right, title and interest in and to both the January 31, 2012 Ripoff Report and the February 2, 2012 Ripoff Report to Goren who thereupon assigned same to SMALL JUSTICE LLC.**

**See Pl. SOF ¶¶64, 65, 66, 68, 69.**

28.     On September 2, 2013, Goren filed his First Amended Complaint in the current action, including the February 2 Post and adding "Christian DuPont dba Arabianights-Boston, Massachusetts" as his co-Plaintiff seeking (COUNT I) declaratory judgment as to copyright ownership, and alleging (COUNT II) copyright infringement, (COUNT III) libel, (COUNT IV) intentional interference with prospective contractual relations, and (COUNT V) unfair and deceptive practices under Mass. G.L. c. 93A. (Document 13).

**Response. Admitted.**

29.     In response to Xcentric's Motion to Dismiss, this Court allowed COUNT I and COUNT II, regarding copyright ownership and infringement, to survive. (Document 45, Memorandum Order dated Mar. 24, 2014). The Court dismissed COUNT III and

COUNT IV for libel and intentional interference, respectively. (*Id*.) The Court partially dismissed COUNT V for unfair and deceptive practices, only leaving intact the claim that Xcentric's arbitration and corporate advocacy program may constitute unfair or deceptive practices. (*Id*.)

> **Response. Objection, statement purports to characterize the March 24, 2014 Order.**

Respectfully submitted,
SMALL JUSTICE LLC, RICHARD A. GOREN, and CHRISTIAN DUPONT,

Plaintiffs,

by their attorney,

July 30, 2014

*/s/ Richard A. Goren*
Richard A. Goren, Esq. BBO #203700
Law Office of Richard Goren
101 Federal Street Suite 1900
Boston MA 02110
617-261-8585
rgoren@richardgorenlaw.com

### CERTIFICATE OF SERVICE

I hereby certify that this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to those non-registered participants (if any) on July 30, 2014.

*/s/ Richard A. Goren*