```
 1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2

 3   _____

 4   SMALL JUSTICE, LLC, et al.,

 5                    Plaintiffs,         Civil Action
                                          No. 13-11701-DJC
 6   v.
                                          September 24, 2014
 7   XCENTRIC VENTURES, LLC,              3:03 p.m.

 8                    Defendant.
     _____
 9

10

11              TRANSCRIPT OF MOTION HEARING

12        BEFORE THE HONORABLE DENISE J. CASPER

13              UNITED STATES DISTRICT COURT

14           JOHN J. MOAKLEY U.S. COURTHOUSE

15                   1 COURTHOUSE WAY

16                   BOSTON, MA  02210

17

18

19

20
                    DEBRA M. JOYCE, RMR, CRR
21                   Official Court Reporter
                  John J. Moakley U.S. Courthouse
22                 1 Courthouse Way, Room 5204
                       Boston, MA  02210
23                   joycedebra@gmail.com

24

25
```

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFFS:

 3   RICHARD A. GOREN, ESQ.
     Law Office of Richard Goren
 4   101 Federal Street, Suite 1900
     Boston, MA 02110
 5   617-261-8585

 6   FOR THE DEFENDANT:

 7   MARIA CRIMI SPETH, ESQ.
     Jaburg & Wilk PC
 8   3200 North Central Avenue
     Suite 2000
 9   Phoenix, AZ 85012
     602-248-1089
10
     DANIEL G. BOOTH, ESQ.
11   Booth Sweet LLP
     32R Essex Street
12   Suite 1A
     Cambridge, MA 02139
13   617-250-8629

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2              (The following proceedings were held in open
 3   court before the Honorable Denise J. Casper, United States
 4   District Judge, United States District Court, District of
 5   Massachusetts, at the John J. Moakley United States Courthouse,
 6   1 Courthouse Way, Boston, Massachusetts, on September 24,
 7   2014.)
 8              THE CLERK:  Civil action 13-11701, Small Justice v.
 9   Xcentric Ventures.
10              Would counsel please state your name for the record.
11              MR. GOREN:  Good afternoon, your Honor.  Richard Goren
12   for the plaintiffs.
13              THE COURT:  Good afternoon, counsel.
14              MS. SPETH:  Good afternoon, your Honor.  Maria Crimi
15   Speth for Xcentric Ventures, and with me is Daniel Booth, also
16   for Xcentric Ventures.
17              THE COURT:  Good afternoon, counsel.
18              MR. BOOTH:  Good afternoon.
19              THE COURT:  Counsel, I know we're here on the
20   defendant's motion for summary judgment.  I've had a chance to
21   review the papers.  I'm also familiar with the facts alleged
22   from the previous motion as well, but I've had a chance to
23   review the papers and the parties' positions at this point.
24              Counsel, I'll hear from you, if you want to add
25   anything to your papers in support of the motion.
```

1          MS. SPETH:  Thank you, your Honor.

2          I'd like to address the copyright claim first, your

3   Honor.

4          I think that the pleadings thus far make clear that

5   Mr. Goren and Small Justice are barred from bringing any claim

6   because the voluntary transfer is in violation of 17 USC

7   Section 201(e).

8          I think it's important to note that the purpose of

9   that statute was exactly this situation, so that copyrights

03:05 10   would not be used to -- for censorship purposes.

11          Now, Mr. Goren argues that Xcentric lacks standing to

12   raise this issue, but of course we are not the plaintiff here,

13   we are the defendant, and he has the burden of proof and we are

14   simply stating that he lacks standing.

15          The Supreme Court in _Lujan_ talked about the standing

16   factors, and we believe even if we did have to show standing we

17   do have standing.

18          Your Honor, I would also -- I would like to talk also

19   about Mr. Dupont's claims, because I recognize that even if the

03:06 20   Court -- I should say when the Court determines that Mr. Goren

21   and Small Justice have no claims, we still have Mr. Dupont as a

22   plaintiff.  So with respect to Mr. Dupont's claims brought via

23   the power of attorney to Mr. Goren, there's two issues, and I

24   want to focus, your Honor, on document 56, number 7, 56-7,

25   which was the screen shot --

1             THE COURT: And I do have that here electronically.

2             MS. SPETH: Great, thank you, your Honor.

3             I think that is the most important document on this

4     issue of whether Mr. Dupont manifested an assent.

5             There's two different things. One is, there's the

6     clickwrap, which is the box that he had to click, and all of

7     the courts that have looked at clickwraps have agreed that

8     clickwraps are enforceable. The box that he checked

9     specifically says that he is giving Ripoff Report irrevocable

03:07 10  rights to post it on the website. So I don't understand how

11    Mr. Goren could possibly have a claim or Mr. Dupont could

12    possibly have a claim for copyright infringement when he gave

13    us irrevocable rights to post the report on the website. So

14    that's the clickwrap portion.

15            Then there's the whole issue of did he assent to the

16    entire terms and conditions. And, your Honor, I think that

17    this makes pretty clear that even if you view the terms of use

18    or the terms and conditions as a browse-wrap, even though I

19    don't think you should because the box was right underneath it,

03:07 20  but even if you view it as a browse-wrap, it's clear on its

21    face that he is agreeing to term and conditions.

22            It's titled "terms and conditions," there's a scroll

23    bar for him to scroll if he chooses to scroll, if he chooses

24    not to scroll, that's his choice, but it is clear to the user

25    that they are agreeing to these terms if they go forward and

```
 1   submit their report.
 2           Very, very importantly, Mr. Dupont has not provided an
 3   affidavit in this case saying otherwise.  He has not raised any
 4   genuine issue of fact to dispute in any way what we see with
 5   our own two eyes as to what the submission page looked like.
 6           With that, your Honor, I'd like to turn to the unfair
 7   practices claim.
 8           First and foremost, the CDA, the Communications
 9   Decency Act, does bar the unfair --
10           THE COURT:  Can I just back up for one minute just so
11   I understand?
12           So as I understood your copyright position, you both
13   argued that there's no legal basis for the involuntary transfer
14   of the copyright, but also that, for the reasons that you were
15   summarizing, Mr. Dupont essentially didn't have anything to
16   give in terms of his -- any copyright interest.
17           MS. SPETH:  Well, I don't think I would phrase it
18   quite that way, your Honor.
19           I would say there's three parties here.  There's
20   Mr. Goren and Small Justice, as to them, they have no claim
21   because there couldn't be an involuntary transfer.  The
22   involuntary transfer is barred by federal statute.
23           THE COURT:  By 201.
24           MS. SPETH:  Right, by 201.  That's my claim as to
25   them.
```

1            As to Mr. Dupont, my argument would be -- and I
2  realize that Mr. Goren spent a lot of time talking about
3  exclusive rights, nonexclusive rights, copyrights, I don't
4  think any of that matters, your Honor.  I think it's very
5  simple.  Mr. Dupont clearly checked a box that said that Ripoff
6  Report had an irrevocable right to post the material.  So how
7  could he then come back and sue us for copyright infringement
8  for posting the very material that he gave us permission to
9  post?
03:10 10           So I think that's the core of the issue as to
11 Mr. Dupont, and I think the core of the issue as to Small
12 Justice and Mr. Goren is the issue of the involuntary transfer
13 being void.
14           THE COURT:  Understood.
15           MS. SPETH:  Did I answer your question, your Honor?
16           THE COURT:  You did.
17           MS. SPETH:  Thank you.
18           With respect to unfair practices, the Communications
19 Decency Act was created for the very purpose of encouraging
03:10 20 websites in the position of Xcentric Ventures and Ripoff Report
21 to be proactive and to not take a hands-off approach.  If you
22 look at the history of how the Communications Decency Act came
23 along, there was some New York case law that essentially was
24 rewarding websites for taking a hands-off approach, and the
25 Communications Decency Act was a response to that.  And the

1   clear message was we want to give you editorial functions and
2   the ability to do redactions or removals if you choose to, and
3   to not feel that you're going to then become responsible for
4   the post as a result of that.
5         And I believe that the unfair practices claim in this
6   case is really just an end run around the plethora of case law
7   that says that Ripoff Report cannot be held responsible for
8   third-party content.
9         If a third party were to -- were alleged to have done
03:11 10   the things that Xcentric is alleged to have done, had an
11   arbitration program that somehow is deceptive and unfair, which
12   I don't know how it's deceptive and unfair, I think the record
13   is undisputed that the arbitration program is modeled after the
14   Uniform Dispute Resolution Procedure Act.  It's exactly the
15   same procedure that the National Arbitration Forum uses, it's
16   the same procedure that the World Intellectual Property
17   Organization uses, that the AAA uses, that the court uses, so
18   there's nothing unfair and deceptive about it.  But if we
19   assume that there was, a third party -- when a third party did
03:12 20   it, it wouldn't be a problem, and the only this thing that is
21   arguably unfair and deceptive that I believe your Honor was
22   concerned about was but you're the one who published the
23   reports, and having published the reports, is it okay to then
24   charge somebody to arbitrate them?  And the problem with that
25   is in order to get there, you have to find us to be the

1    publisher, you have to find my client to be the publisher,
2    because if my client's not the publisher, there's certainly
3    nothing wrong with arbitrating the reports.  Now, of course my
4    contention is there's nothing wrong with it anyway, but the
5    only even allegation that has been made is that the something
6    wrong with it is that somehow Ripoff Report should have just
7    without charge taken down the post because it was false.  And
8    again, that's a classic CDA problem.
9           With respect to the CAP program, I would analyze that
03:13 10   in exactly the same way.
11          Finally, your Honor, I would point out that there is
12   no injury to Mr. Goren as a result of either the CAP program or
13   the arbitration program.  Mr. Goren admits that his injury
14   arises from the post by Mr. Dupont, not by anything that
15   Xcentric did.
16          And with that, your Honor, I think I only have a
17   couple of minutes left, and I'd like to reserve that for then.
18          THE COURT:  You may.  You may.
19          Mr. Goren.
03:13 20         MR. GOREN:  Thank you, your Honor.
21          Prior to the start of the hearing, I handed up three
22   cases which --
23          THE COURT:  And I did receive that.
24          MR. GOREN:  They all came down after my brief, your
25   Honor, and the Barnes & Noble 9th Circuit case, that pertains

```
 1   to the constructive notice cases attendant to the browse-wrap.
 2           The Moore v. Willis case --
 3           THE COURT:  And do you -- counsel, do these relate
 4   more to the copyright issue, is that what you're saying?
 5           MR. GOREN:  Yes, your Honor.  And given that you've
 6   limited our time, let me jump into that.
 7           THE COURT:  Okay.
 8           MR. GOREN:  The plaintiff, Small Justice Limited
 9   Liability Company, comes to court with a registration of
10   copyright.  The registration indicates on its face that it's by
11   agreement, by assignment.  You have a copy of that.  Therefore,
12   the plaintiffs -- the plaintiff, Small Justice Limited
13   Liability Company, is the presumptive owner.  And it is by that
14   assignment and it is Xcentric's affirmative defense, they
15   are -- Xcentric must come forward with evidence, and they
16   haven't, that a jury could find that the assignment was not by
17   the author's duly authorized agent.  And you'll see Latin
18   American Music Company, 499 F.3d 32, 42 (1st Cir. 2007) case.
19           So it is the defendant's burden of proof to prove that
20   it has a contract, a contract that they claim --
21           THE COURT:  Counsel, just to back up, though.  In
22   regards to the copyright claim, isn't it the plaintiffs' burden
23   to show ownership of the copyright?  I mean, isn't that where I
24   have to start?
25           Meaning, don't I have to get over the involuntary
```

```
 1   transfer, at least as to Small Justice?
 2           MR. GOREN:  No, your Honor, you do not.  The
 3   involuntary transfer argument is moot.
 4           First off, if Xcentric is correct, that by the
 5   author's registration it owns an exclusive license, then there
 6   was nothing left of the exclusive rights of copyright under the
 7   Act to be transferred.  So end of discussion.
 8           If, however, plaintiffs are correct that all that
 9   checking the box did was to facially grant what Ms. Speth calls
10   an irrevocable right to post, all that does as a matter of law
11   is grant a nonexclusive license.  Under the statute that does
12   not carry with it any of the exclusive rights or remedies or
13   protections, including this 201(e) that they seek shelter
14   under.
15           And, Judge, if you take a look at the face of the
16   statute, and I did spell this out in my brief, the statute
17   provides protection for the author.  It is a defense that the
18   author can bring, and Xcentric brings no case law to this Court
19   to support its position.
20           The only case it brings forth is this Rodrigue case,
21   and there, it was this wrinkle of this community property.  But
22   there, the husband, he was the author, the artist.  He had
23   created I think there were photographs, and the wife claimed by
24   right of community property, I own half the copyright, and the
25   district court held that the spouse was entitled to -- pursuant
```

```
 1  to the community property law.  And the 5th Circuit reversed
 2  and held that the author -- but it was the author that was
 3  making this claim.  The author facially fit, although it wasn't
 4  argued in the case, but he facially fit within that
 5  entitlement.  And notwithstanding my sister's argument to brush
 6  off the 9th Circuit case, gosh, it's right there.  And the case
 7  I just handed up, the district court case, adopts that and also
 8  goes a little further and says that whether a copyright can be
 9  transferred by a court to satisfy execution or a judgment is a
10  matter of state law.
11          Judge, let me come back to the contract issue and
12  Mr. Dupont.
13          Xcentric's motion seeks dismissal of plaintiffs'
14  copyright claims based on having a binding contract with the
15  author, DuPont.  How you resolve that contract issue is going
16  to be res judicata as to Xcentric's counterclaim.  The
17  counterclaim, paragraph 16, Dupont contracted with Xcentric;
18  17, the contract required the author to grant an exclusive
19  worldwide license; 18, the contract required the author to
20  indemnify; and then the allegations of breach, by failing to
21  defend Xcentric --
22          THE COURT:  And this is the counterclaim, counsel,
23  that you're reading from?
24          MR. GOREN:  Yes, your Honor.
25          THE COURT:  Okay.
```

1     MR. GOREN: And by failing to defend Goren's claims,
2  DuPont had breached the contract.
3     So they had the burden on the counterclaim, they had
4  the burden on the affirmative defense, and it is their
5  obligation to come forth with evidence.
6     And, Judge, Xcentric argues that you shouldn't
7  consider the FTC.com disclosures in determining whether there
8  was this constructive notice.
9     One of DuPont's affirmative defenses to the 90 -- I
03:21 10  beg your pardon -- to the contract action is 93A, Section 9.
11  And in construing whether there's a binding contract arising
12  out of the Xcentric's offer of free membership, Section 2 of
13  93A expressly tells you to be guided by FTC interpretations.
14  The 2000 FTC.com disclosures, the May 2011 asking for input
15  from merchants and others, and the revised guidance in March
16  2013 by its terms only addresses disclosures required pursuant
17  to the laws that the FTC enforces.
18     The contract, Judge. Xcentric argues --
19     THE COURT: Counsel, you have a few minutes left,
03:22 20  so --
21     MR. GOREN: Okay. -- that it's a clickwrap agreement.
22     Judge, a clickwrap agreement is where a user is
23  required to click on "I agree" box after being presented with a
24  list of the terms and conditions of use. That's not the case
25  here. My brief lays it out.

```
 1            What this is, is a purported browse-wrap agreement,
 2   where the website terms and conditions are posted by a
 3   hyperlink and the user can continue to use the website without
 4   visiting the page on the disclosure.  But it is Xcentric's
 5   burden to prove that a reasonable user -- this is the standard
 6   you alluded to in your March 24th decision, your Honor --
 7   whether a reasonable user in the author DuPont's place was on
 8   constructive or inquiry notice.  So the lack of an affidavit
 9   from the author DuPont is immaterial.
10            Gosh -- one second.
11            The unfair practices claim, your Honor, it's not an
12   end run around the CDA.
13            And, Judge, I handed to the defendant when we were
14   here on the argument on the motion to dismiss the case that you
15   decided, where the website -- where one of the triggers or
16   hooks against the website was its advertisements and its
17   solicitations, and your decision made very clear that that is
18   the website's individual speech.
19            (Pause.)
20            MR. GOREN:  Judge, you ruled that the refusal of my
21   individual request as a party to remove the content displayed
22   was within the discretion of an ISP under the CDA, that's at
23   page 515 of your decision.  And the CDA protects the website
24   from being treated as a speaker of that, but the issue before
25   you is one of contract, it's not tort.  The CDA is not
```

1  implicated in the question of whether there's a binding
2  contract between the website and the user and whether that is
3  enforceable.
4          And the plaintiffs don't seek to invalidate Xcentric's
5  editorial policy.
6          And ten seconds, Judge.  This is technical, but this
7  is good law.  All that was facially granted was a nonexclusive
8  license, and you have good grounds before you to hold that
9  Xcentric can't enforce that contract on the non-removal.
10         And I do rely on my papers, and I would also ask at
11 the end that there is enough in the record that should you
12 deny, as I believe you must, defendants' motion for summary
13 judgment, you must also grant plaintiffs' summary judgment as
14 to ownership of the copyright and dismiss Xcentric's
15 counterclaim.
16         Thank you.
17         THE COURT:  Thank you, counsel.
18         You'd reserved a few moments.
19         MS. SPETH:  Thank you, your Honor.
20         I want to add a couple of cites to the brief that
21 we -- that I believe may not be in the brief.
22         Your Honor, there's a case in Massachusetts that says
23 absent fraud, a party is bound to the terms of the contract
24 whether or not he read them.  And that is in the context of a
25 clickwrap and a failing to scroll situation, so it's very

1    relevant.  It's Kilgallen v. Network Solutions, 99 F. Supp.2d

2    125 (D. Mass. 2000).

3             And also the 1st Circuit, your Honor, has said that a

4    party is deemed to know the contents of a contract to which he

5    assents and that that presumption exists even when the party

6    never read the contract.  That's Soto v. State Industrial

7    Products, 642 F.3d 67 in the 1st Circuit, your Honor, 2011.

8             And, your Honor, I believe that your Honor also issued

9    a decision that said the failure to read or understand the

03:28 10    contents of a release in the absence of fraud does not void its

11   effect, and that was Doe v. Cultural Center (sic.) in front of

12   your Honor.

13            Just a couple of more points, if I may, your Honor.

14            Mr. Goren presented to the Court that he has the

15   presumption as the owner because of his copyright registration.

16   However, Xcentric also has a copyright registration, and it was

17   prior to Mr. Goren's copyright registration.  So under Section

18   205 of the Copyright Act, we have priority on that point.

19            The cases that Mr. Goren handed to your Honor this

03:29 20   morning, just very quickly, the Barnes & Noble case was a

21   browse-wrap agreement, not a clickwrap agreement.  The Druco

22   case talks about an illusory contract, but Druco is inapposite

23   because in this case there was an offer and acceptance and

24   consideration.  The consideration being that if you agree to

25   our terms, we will post your report, we will give you a forum

```
 1  to speak.  And that was -- Druco was different, that was an
 2  illusory contract.
 3          The Moore case that Mr. Goren presented to your Honor
 4  simply states that you can't raise a Section 201 claim when
 5  you've previously transferred voluntarily, which is not the
 6  case here.
 7          And also, Mr. Goren talked about the Federal Trade
 8  Commission rules.  We don't dispute that the FTC rules are
 9  relevant to the unfair practices claim, we just dispute that
10  the FTC bulletin about the terms of use is relevant in this
11  case, your Honor.
12          And that's all I have.  Thank you.
13          MR. GOREN:  May I have a minute, your Honor?
14          THE COURT:  One minute.  I'll give you the last
15  minute, counsel.
16          MR. GOREN:  Your Honor, that the -- was a link to the
17  terms of service on the website, but where the user completes
18  the transaction and there's no requirement or even a request to
19  review the terms of the service, read the 9th Circuit holding,
20  that alone does not -- cannot constitute informed consent
21  constituting a contract.
22          The registration by Xcentric, that's a bit of a red
23  herring, Judge.  It's not in the summary judgment record, and
24  if the Court were to consider that, we'd have to come back and
25  brief the issues we touched on on the motion to dismiss about
```

```
 1    whether the registration of the -- what do they call -- the
 2    collective --
 3              MS. SPETH:  Compilation.
 4              MR. GOREN:  -- compilation constitutes a registration
 5    of the individual title.  There's a New York case that says no,
 6    there's a recent 9th Circuit case, we brought that before you,
 7    but that's not in the summary judgment record.
 8              And, Judge, if you decide up or down that the author's
 9    registration did not complete a contract, end of discussion.
10              Druco, the illusory thing is there's no consideration
11    when the offeror retains the right to change the terms at any
12    time without notice.
13              Thank you.
14              THE COURT:  Thank you.
15              Counsel, thank you again for your arguments on this
16    motion.  I will take it under advisement.  And, counsel, I
17    assure you I'll go back and read your papers again with your
18    arguments in mind.
19              Thank you.
20              THE CLERK:  All rise.
21              (Court adjourned at 3:32 p.m.)
22                     - - - - - - - - - - - -
23
24
25
```

CERTIFICATION

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter to the best of my skill and ability.

/s/Debra M. Joyce                    September 30, 2014
Debra M. Joyce, RMR, CRR             Date
Official Court Reporter