UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SMALL JUSTICE LLC, RICHARD A. GOREN, and CHRISTIAN DUPONT dba ARABIANNIGHTS-BOSTON MASSACHUSETTS, | ) ) ) ) ) | Case No.:  1:13-cv-11701-DJC |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| XCENTRIC VENTURES LLC, | ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S RENEWED MOTION FOR AN AWARD OF COSTS AND
ATTORNEY'S FEES WITH SUPPORTING DOCUMENTATION**

Pursuant to Fed. R. Civ. P. 54(d), Defendant Xcentric Ventures LLC ("Xcentric"), as the

prevailing party under 17 U.S.C. § 505, again moves this Court for an award of its full costs,

including a reasonable attorney's fee, by refiling its motion with supporting documentation as per

this Court's September 30, 2015 Memorandum and Order. Doc. 134 p. 9.

**I.     Factual Background and Procedural History.**

On March 20, 2013, Plaintiff Richard A. Goren ("Goren"), the principal of Plaintiff Small

Justice, LLC ("Small"), obtained a default judgment and permanent injunction against the third

Plaintiff, Christian DuPont dba Arabiannights-Boston, Massachusetts ("DuPont") (collectively,

the "Plaintiffs") in Massachusetts Superior Court (the "Superior Court"). Goren then sought and

obtained an amended judgment, purporting to appoint Goren attorney-in-fact for DuPont, and

purporting to transfer to him DuPont's copyright to a Report DuPont had posted on

ripoffreport.com, a website operated by Xcentric. So armed, Goren and Small filed this action

against Xcentric on July 16, 2013, raising one count of copyright infringement. Doc. 1. Xcentric moved to dismiss on August 8, 2013. Doc. 8. Xcentric argued that the claim failed as a matter of law under the Copyright Act on the grounds that DuPont had transferred the Report's copyright to Xcentric when he posted it, and Xcentric had duly registered its copyright, so Goren and Small's later conflicting transfer failed under 17 U.S.C § 205(d); and that a state court judgment purporting to transfer a copyright is invalid *per se* pursuant to 17 U.S.C. § 201(e). Doc. 8.

On August 16, 2013, Goren obtained another amended Superior Court judgment, purporting to authorize Goren to assign to himself DuPont's copyrights for two Reports, and to sue on DuPont's behalf. Doc. 13-3. Goren executed purported copyright transfers for the Reports from DuPont to himself, and then from himself to Small. Plaintiffs filed an amended complaint against Xcentric in this Court on September 2, 2013, alleging copyright infringement and four new causes of action: a declaratory judgment as to the ownership of the copyrights in the two Reports; libel; intentional interference with contractual relations, and violations of Mass. Gen. L. c. 93A ("Chapter 93A"). Doc. 13. Xcentric again moved to dismiss on September 16, 2013, asserting both its ownership of the copyrights and its immunity from the other claims under 47 U.S.C. § 230(c)(1), the Communications Decency Act ("CDA"). Doc. 14. On October 15, 2013, Goren moved for cross-judgment on the pleadings on the issues of Xcentric's copyright ownership and CDA immunity. Doc. 20.

On March 24, 2014, the Court dismissed the libel and tortious interference claims, and all bases but one for the Chapter 93A claim, concluding "that CDA immunity applies and shields Xcentric from all claims based on the Reports." Doc. 45 p. 10. Xcentric answered the Complaint on April 7, 2014, raising a counterclaim for breach of contract against DuPont. Doc. 49. On April

23, 2014, Plaintiffs proposed to settle the complaint if Xcentric took down the Reports and ceased their public display, and paid Goren $1,000,000. *See* Doc. 105-1; Ex. A ¶ 9 hereto.[1]

Xcentric moved for summary judgment on the remaining claims on June 13, 2014, "on grounds that (1) the alleged copyright transfer was barred as an involuntary transfer, (2) by posting on the website, the author of the post gave Defendant an exclusive license and irrevocable right to use the post, and (3) the Communications Decency Act protects Defendant from liability for editorial decisions." Doc. 55 p. 1. On March 27, 2015, the Court granted summary judgment to Xcentric on all counts. Doc. 100. The Court found DuPont had validly conveyed his copyrights to Xcentric, or at least granted a non-exclusive license by which "he waived his right to sue Xcentric for infringement where its use did not exceed the scope of that license." *Id.* pp. 8, 10-11. Moreover, Goren and Small's copyright infringement claim failed under 17 U.S.C. § 201(e): "DuPont's purported assignment to Goren (executed by Goren as his attorney-in-fact) of the copyrights to the Reports had no legal effect and Goren acquired nothing supporting a right to sue Xcentric for copyright infringement." *Id.* p. 11; *see also id.* p. 12 ("Section 201(e) eliminates any ownership interest in the copyrights claimed by Goren and Small Justice."). With the copyright claims eliminated, the remaining Chapter 93A claim, premised on the Reports' presence on Xcentric's website in tandem with other services offered by Xcentric, failed on the elements. The Plaintiffs had not alleged a causal link between Xcentric's conduct and any harm allegedly inflicted on Goren's reputation, as Chapter 93A requires. *Id.* pp. 13-14.

The Court rendered judgment on March 27, 2015. Doc. 104. Plaintiffs filed a notice of appeal from the judgment on April 24, 2015, then moved to amend their notice of appeal on May

---

[1] In June 2015, after Plaintiffs had lost all of their claims and filed a notice of appeal, Goren offered to abandon the appeal for removal of the Reports plus $100,000. Ex. A ¶ 10.

15, 2015. Doc. 108, 113. On June 5, 2015, Plaintiffs moved for an indicative ruling to allow the Court to vacate the judgment. Doc. 118. Xcentric moved to dismiss its counterclaim on June 19, 2015. Doc. 121. DuPont moved to amend the complaint on July 30, 2015. Doc. 129. On September 10, 2015, Xcentric moved to sanction Goren for filing the DuPont motion to amend the dismissed complaint. Doc. 132.

On September 30, 2015, after giving the parties notice and an opportunity to respond, the Court appended a footnote to its appealed-from March 27, 2015 memorandum and order. Doc. 115, 134 p. 11. At the same time, the Court granted Xcentric's motion to dismiss its counterclaim and denied Plaintiffs' motion to amend the notice of appeal, Plaintiffs' motion for an indicative ruling, DuPont's motion to amend the complaint, and Xcentric's motion for sanctions. Doc. 134.

Xcentric timely filed its initial motion for an award of costs and attorney's fees on April 10, 2015, within fourteen days of the judgment. Doc. 105. *See* Fed. R. Civ. P. 54(d)(2)(B)(i). On September 30, 2015, the Court denied the motion without prejudice to refiling with supporting documentation regarding attorney's fees and costs. Doc. 134 p. 9. Xcentric now does so.

## II.    Legal Standard.

"[T]he prevailing litigant is ordinarily not entitled to collect a reasonable attorney's fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). "Fee-shifting statutes represent a departure from [that] historic 'American Rule.'" *Hutchinson v. Patrick*, 636 F.3d 1, 8 (1st Cir. 2011). The Copyright Act is one such exception to the "American Rule." *Fogerty v. Fantasy*, 510 U.S. 517, 533-34 (1994). It expressly allows for such fees:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

"Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty*, 510 U.S. at 534. "This fee-shifting provision is to be applied in an 'evenhanded manner' whether the prevailing party was aligned as the plaintiff or the defendant." *Zamoyski v. Fifty-Six Hope Rd. Music Ltd.*, 767 F. Supp. 2d 218, 220 (D. Mass. 2011) (*quoting Fogerty*, 510 U.S. at 525 n. 12).

"[A] 'prevailing party' is one who has been awarded some relief by the court." *Buckhannon Board & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001) (*citing* Black's Law Dictionary). "In order for a party to be considered prevailing and thus entitled to attorneys' fees, the case must have resulted in a material change in the legal relationship of the parties and that change must be the result of a 'judicial imprimatur.'" *Doe v. Boston Public Schools*, 550 F. Supp. 2d 170, 172-73 (D. Mass. 2008) (*quoting Buckhannon*, 532 U.S. at 604-05). "A 'prevailing party' is one who 'has prevailed on the merits of at least some of his claims.'" *Spooner v. EEN, Inc.*, 644 F.3d 62, 66 (1st Cir. 2011) (*quoting Buckhannon*, 532 U.S. at 603) (internal quotation omitted). "[T]he material alteration test the Supreme Court articulated in *Buckhannon* governs prevailing party status under § 505 of the Copyright Act." *Cadkin v. Loose*, 569 F.3d 1142, 1149 (9th Cir. 2009) (*citing, inter alia, Torres-Negron v. J&N Records, LLC*, 504 F.3d 151, 164 & n.9 (1st Cir. 2007)); *accord Spooner*, 644 F.3d at 66.

In *Fogerty*, the Supreme Court cited with approval the Third Circuit's nonexclusive list of factors to consider in making copyright attorney's fee awards: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*,

510 U.S. at 534 n. 19 (*quoting Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). The First Circuit has adopted the same factors. *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F. 3d 70, 75 (1st Cir. 1998); *see Zamoyski*, 767 F. Supp. 2d at 220 (describing the *Fogerty* factors as "relevant but non-determinative"). *Fogerty* allows attorney's fees awards to a defendant "where the plaintiff's copyright claim was neither frivolous nor instituted in bad faith" but were "objectively quite weak." *Garcia-Goyco v. Law Envtl. Consultants, Inc.*, 428 F.3d 14, 20-21 (1st Cir. 2005); *Airframe Sys. v. L-3 Communs. Corp.*, 658 F.3d 100, 108 (1st Cir. 2011).

## III. Argument.

### A. Xcentric Is the Prevailing Party.

"In ruling on an attorneys' fees motion, a court first must decide whether the moving party is a prevailing party in the original action." *Ritchie v Gano*, 754 F. Supp. 2d 605, 608 (S.D.N.Y. 2010). "The appropriate analytic framework requires a fee-seeker to show both materiality and causation as prerequisites to achieving prevailing party status." *New Hampshire v. Adams*, 159 F.3d 680, 684 (1st Cir. 1998) (*citing Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). The First Circuit has interpreted *Buckhannon* "as requiring two elements: (1) a 'material alteration of the legal relationship of the parties,' along with (2) a 'judicial imprimatur on the change.'" *Berishev v. Chertoff*, 486 F. Supp. 2d 202, 204 (D. Mass. 2007) (*citing and applying Smith v. Fitchburg Public Schools*, 401 F. 3d 16, 22 (1st Cir. 2005)).

Xcentric sought and obtained the dismissal of all claims on the merits, including both copyright causes of action. Having sought and obtained judicially sanctioned relief that worked a material and permanent change in the legal relationship between the parties, Xcentric is the prevailing party. Xcentric demonstrated, on its motion for summary judgment, that Goren and

Small could not prove one of the two elements of a copyright claim: ownership. *See* Doc. 45 p. 1 ("For the Plaintiffs to establish copyright infringement, they must show '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'") (*quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991)).

**B.    Xcentric Should Be Awarded Its Full Costs.**

The Court has discretion "to allow the recovery of full costs." 17 U.S.C. § 505. Plaintiffs put Xcentric to unusual costs that Xcentric should recover in full. Plaintiffs knew that Xcentric "is an Arizona limited liability company with its principal office in Arizona." Doc. 1 ¶ 6. Nevertheless, Goren and Small brought suit suit against Xcentric in Massachusetts, though the venue statute for copyright claims provides that they "may be instituted in the district in which the defendant or his agent may be found." 28 U.S.C. § 1400(a). Xcentric should recover all reasonable costs of travel, accommodation, and *pro hac vice* admission incurred by its Arizona counsel, Maria Crimi Speth, because Plaintiffs necessitated those costs by filing in this Court.

Plaintiffs should also bear the cost of Xcentric's computer-assisted legal research. *See InvesSys, Inc. v. McGraw-Hill Cos., Ltd.*, 369 F.3d 16, 22 (1st Cir. 2004).

**C.    Xcentric Should Be Awarded Its Reasonable Attorney's Fees.**

Attorney's fees are warranted based on a reasoned application of the *Fogerty* factors: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, at 534 n. 19. Prevailing defendants, no less than prevailing plaintiffs, may recover their attorney's fees in a copyright case: "Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only

as a matter of the court's discretion." *Id.* at 534. "[I]n section 505 Congress aimed to provide a potential incentive to the winner who asserts a successful copyright claim or defends against an unworthy one." *InvesSys, Inc.*, 369 F.3d at 20. "When the prevailing party is the defendant, who by definition receives not a small award but no award [of damages], the presumption in favor of awarding fees is very strong…. For without the prospect of such an award, the party might be forced into a nuisance settlement or be deterred altogether from exercising his rights." *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004).

This case was frivolous. It was improperly motivated. It was objectively unreasonable. The Court should act to deter litigants from pursuing Plaintiff's path despite black-letter law.

Plaintiffs' copyright claims were far from reasonable. It was objectively unreasonable to sue Xcentric for infringement when the black-letter law of the Copyright Act bars the sole basis on which Goren or Small could claim ownership: a transfer engineered via default judgment. *See* Doc. 134 p. 2 ("any rights to copyright ownership claimed by Small Justice were improperly acquired in the courts of a Superior Court action that, contrary to 17 U.S.C. § 201(e), purported to transfer copyright ownership from DuPont to Goren"). It was objectively unreasonable to insist that the purported transfer was entitled to full faith and credit on the basis of a Superior Court judgment that is void. *See* Doc. 127 pp. 10-17. Likewise, it was objectively unreasonable to seek a declaratory judgment of copyright ownership, in the face of Xcentric's registration covering both Reports, or to contend that DuPont's conveyance of copyright ownership to Xcentric was invalid. Plaintiffs' arguments rested on willful blindness to the routine functions of a website's links, scroll bars and check boxes. "A reasonably prudent internet user, however, is conversant in the basic navigation tools required to effectively utilize a website." Doc. 100 p. 9.

Defendants in the First Circuit have been awarded attorney's fees when the plaintiff could not prove ownership. *See Latin Am. Music Co. v. Media Power Group, Inc.*, 989 F. Supp. 2d 192, 197 (D.P.R. 2013). The First Circuit has affirmed an award to "a defendant without authorization from either of two claimed copyright holders defending against an infringement claim by asserting that its work originated from the second holder, not the plaintiff." *Mag Jewelry Co., Inc. v. Cherokee*, 496 F.3d 108, 123-24 (1st Cir. 2007). On similar facts, Xcentric obtained its copyright from the author of the Reports, DuPont, who was not one of the plaintiffs claiming injury on either of the copyright claims. *See* Doc. 13 ¶ 61 (alleging Small owned the copyright of the Reports); *id.* ¶¶ 68-69 (alleging Xcentric infringed Goren and Small's copyrights).

"The First Circuit has accorded the factor of 'objective unreasonableness' substantial weight in the determination of whether to award attorneys' fees." *Yankee Candle Co. v. Bridgewater Candle Co.*, 140 F. Supp. 2d 111, 115 (D. Mass. 2001) (citing *Lotus Dev. Corp.*, 140 F. 3d at 74). "To determine objective unreasonableness, a court must examine the factual and legal assertions advanced by the non-prevailing party and determine whether they were reasonable. An unreasonable claim need not be frivolous to be compensable ... nor does a finding of unreasonableness imply culpability on the part of the losing party, as with Fed. R. Civ. P. 11." *Id.* at 115-16 (*citing Matthews v. Freedman*, 157 F.3d 25, 29 (1st Cir. 1988)).

It shows objective unreasonableness, if not bad faith, for a seasoned attorney to bring copyright claims and tort claims that cannot withstand scrutiny or the application of black-letter statutory law. Plaintiff Goren, in particular, should have known better. He represented the plaintiff in a precedent-setting case involving complex issues of copyright, federal jurisdiction, and immunity. *See Bassett v. Mashantucket Pequot Museum & Res. Ctr.*, 204 F.3d 343 (2d Cir.

2000); *Bassett v. Mashantucket Pequot Tribe*, 221 F. Supp. 2d 271 (D. Conn. 2002). He also recognized the import and scope of Xcentric's CDA immunity before he filed suit. On February 22, 2013, he explained in the Superior Court, "as a matter of federal law, assuming it did not contribute to, or participate in, composing the January 31, 2012 Ripoff Report, under 47 U.S.C. § 230, XCentric is immune from suit." Doc. 56-3 p. 2. Xcentric notified Goren of its immunity too. Doc. 13 ¶ 51. Yet in this Court, without contending that Xcentric had any role in *composing* DuPont's Reports, Goren insisted that Xcentric could not claim CDA immunity. *See id.* ¶ 72.

From the outset, None of Plaintiffs' other claims fared any better. Both state common-law claims for libel and tortious interference, and the bulk of the Chapter 93A claim, failed under the clear provisions and overwhelming precedent of the CDA upon Xcentric's motion to dismiss. The balance of the Chapter 93A claim was dismissed on summary judgment when the Court found that Plaintiffs alleged no harm caused by Xcentric, an essential element of the claim. *See* Doc. 100 p. 14.

From the outset, this case was weak at best, largely if not wholly frivolous or objectively unreasonable. A fee award is necessary to redress such claims. *See Mag Jewelry Co. v. Cherokee*, 496 F. 3d 108, 124 (1st Cir. 2007) (abuse of discretion to deny defendant attorney's fees where plaintiff copyright owner "must have known early on that its infringement claim was tenuous").

Bad faith warrants attorney's fees where evidenced by "hardball conduct in conducting this litigation," *Yankee Candle Co., Inc. v. Bridgewater Candle Co*., 140 F. Supp. 2d 111, 118 (D. Mass. 2001).[2] Bad faith, or improper motivation, is evident in Plaintiffs' settlement proposals,

---

[2] However, "dishonesty is not required for an award." *InvesSys, Inc.*, 369 F.3d at 20-21. *Accord T-Peg, Inc. v. Vt. Timber Works, Inc.*, 669 F.3d 59, 62 (1st Cir. 2012); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc*., 684 F.2d 821, 832 (11th Cir. 1982) ("[A] showing of bad faith or frivolity is not a requirement of a grant of fees. Rather, the only preconditions to an award of fees is that the party receiving the fee be the 'prevailing party' and that the fee be reasonable.").

which the Court may consider for the purpose of deciding a reasonable attorney's fee award. *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011); *cf.* Fed. R. Evid. 408. One might be chary to find bad faith if Goren had sought only to have the Reports taken down, but he wanted much more. Though he had no tenable claims, Goren proposed to settle if Xcentric removed the Reports and paid him $1,000,000. Doc. 105-1; Ex. A ¶ 9. After Plaintiffs lost all their claims, Goren offered to abandon his appeal for removal plus $100,000. Ex. A ¶ 10. A finding of improper motive may be based on "strong circumstantial evidence that the copyright claim was not brought because of its inherent merit but because of its value in settlement negotiations." *Torah Soft Ltd. v. Drosnin*, 00 Civ. 5650 (JCF), 2001 U.S. Dist. LEXIS 19217, *16 (S.D.N.Y. Nov. 27, 2001) ("a party that knowingly gambles on an unreasonable legal theory in order to achieve a secondary gain -- in this case, the leveraging of a settlement -- is indeed improperly motivated"). Plaintiffs' "claims" now most resemble the sense of the term employed by gold rush prospectors. The Court can properly find Plaintiff brought suit with an improper motive.

An award is appropriate to deter Plaintiff's censorious brand of copyright troll litigation. *See generally* Doc. 126 pp. 12-15. Goren's stated goal in this suit was not to vindicate his nonexistent rights as a putative copyright owner but to force Xcentric to violate its policies and take down DuPont's Reports. *See* Doc. 112 ¶ 5. "Such uses of copyright litigation directly threaten the purposes of the Copyright Act, by chilling the creation and dissemination of creative critical works." *Hofheinz v. AMC Prods.*, CV-00-5827 (CPS), 2003 U.S. Dist. LEXIS 16940, *18 (E.D.N.Y. Sept. 1, 2003) (awarding section 505 fees to defendants).[3]

---

[3] *See also id.* ("If plaintiff believed that the Documentary was inaccurate, disrespectful, or otherwise unfair with respect to her late husband, her remedy is to create additional works refuting the Documentary, not to engage in a pattern of private censorship through frivolous assertion of unrelated copyright claims.").

Plaintiffs' litigation tactics were objectively unreasonable. Knowing that copyright claims are within the federal courts' exclusive jurisdiction, Goren nevertheless began in state court. He obtained increasingly convoluted, void judgments against DuPont in uncontested post-default proceedings from a series of four Superior Court Judges with little if any direct experience in copyright law. Goren's purported court-authorized seizure of an author's copyrights was expressly barred by the Copyright Act. Yet when Xcentric's motion to dismiss confronted Goren and Small with the untenable nature of their claim, they doubled down, stubbornly inflating the complaint to add tort claims barred by the CDA or otherwise failing on the merits, and a declaratory judgment claim doomed to the same fate as the copyright claim.

Plaintiffs' many frivolous post-judgment filings are further grounds for shifting the fees Xcentric necessarily incurred in response. Attorney's fees are often awarded where a party "conducted the litigation in a manner calculated to delay hearing on the merits and to increase the opposing party's costs." 5 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.10[D][1] at 14-216 & n. 138 (2010) (collecting cases). Plaintiffs' procedural maneuvers only served to drive up Xcentric's costs and postpone the still-pending appeal. Plaintiffs willfully misconstrued the Court's notice of its intent to append a footnote to the appealed-from summary judgment order. Doc. 115. The footnote reiterates Xcentric's entitlement to judgment on the declaratory judgment claim and forecloses one of Plaintiffs' possible arguments for appeal, but Plaintiffs unreasonably read it as an invitation to take a mulligan, moving to vacate the judgment and amend the dismissed complaint. Plaintiffs' motion seeking to amend their already-filed notice of appeal, Doc. 113, was baseless, as Fed. R. App. P. 4(a)(5) is not a mechanism for such an amendment. Doc. 134 p. 5. Moreover, Plaintiffs failed to show good cause or excusable

neglect supported a *post hoc* amendment; they cited only their own inadvertence, an excuse precluded by First Circuit precedent. *Id*. p. 6. Plaintiffs' motion for relief under Rules 62.1 and 60(b), Doc. 118, was also "without merit." Doc. 134 p. 4. Plaintiffs had no basis to set aside a judgment entered on the terms they pleaded; the complaint had alleged and sought a declaration that Small Justice owns the copyrights, not DuPont. *Id*. p. 5 (citing Doc. 13 p. 17). Accordingly, their motion was not even "potentially meritorious." *Id*. Plaintiffs' motion for leave to amend the complaint after dismissal was also baseless. Doc. 129. Plaintiffs did not pray for any relief for DuPont. The motion to amend, filed four months after judgment, failed to justify the prejudicial delay. Doc. 134 p. 9. While the Court did not impose sanctions over the motion to amend, *id*. p. 10, its timing suggests a bad faith, opportunistic attempt to frustrate the judgment. Goren had crafted the complaint so as to benefit himself or his company Small on any damages award, and only became willing to seek relief for DuPont once his own copyright claims were denied.

Plaintiffs' resistance to Xcentric's dismissal of its dormant counterclaim also warrants fees. Plaintiffs "attempted to use the unresolved counterclaim as a foothold to vacate the judgment entered by the Court, giving Xcentric a reason to pursue its dismissal." Doc. 134 p. 8; *see* Doc. 121 p. 8. Plaintiffs would not assent or stipulate to dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), and fought Xcentric's motion. Doc. 122, 128, 136. Dismissing a counterclaim against DuPont was not prejudicial to him. Doc. 134 p. 8. Being free of the claim inured to his benefit, so fighting its dismissal, simply to cling to a procedural foothold, was an act of bad faith.

A fee award would beneficially deter further such improper claims and tactics. "On the question of deterrence, an award of costs and fees is crucial here, so as to deter this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit

analysis that tells such plaintiffs that they can score big if they win and that there will be no adverse consequences if they lose." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006), *aff'd*, 249 Fed. App'x 845 (2d Cir. 2007).[4]  Compensation and deterrence significantly favor awarding fees for prevailing over a plaintiff-lawyer. *See Bell v. Lantz*, No. 1:13-cv-00035-TWP-DKL, 2015 U.S. Dist. LEXIS 73616, *6 (S.D. Ind. June 8, 2015) (awarding fees to defendant who "took a stand against a plaintiff who was using his knowledge and status as a practicing attorney to file meritless suits and to attempt to outmaneuver the legal system").

An award of attorney's fees is also consistent with the Copyright Act's purposes. Encouraging meritorious defenses benefits the copyright law itself, by helping to demarcate its boundaries. *Fogerty*, 510 U.S. at 527; *accord Lotus Dev. Corp.*, 140 F. 3d at 75; *Dunn v. Brown*, Civ. A. No. 10-11383-FDS, 2012 U.S. Dist. LEXIS 88818, *3 (D. Mass. June 27, 2012). Moreover, "the *Fogerty* court held that district courts should exercise their equitable discretion to award fees in an even-handed manner, and with the goal of vindicating the overriding purpose of the Copyright Act: to encourage the production of original literary, artistic, and musical expression for the public good." *Lotus Dev. Corp.*, 140 F.3d at 72-73. Xcentric has gone to great expense, in this case and others, to defend and vindicate the free expression of authors. Xcentric protected DuPont's writings from Goren's illegitimate attempts to suppress them, blocking Goren's end-run around the "shield" of 17 U.S.C. § 201(e). *See* Doc. 100 p. 12.

---

[4] *Accord Earth Flag Ltd. v. Alamo Flag Co.,* 154 F. Supp. 2d 663, 668 (S.D.N.Y. 2001); *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 820 F. Supp. 2d 569, 574 (S.D.N.Y. 2011); *T-Peg, Inc. v. Vt. Timber Works, Inc.*, No. 03-cv-462-SM, 2005 U.S. Dist. LEXIS 27031, *9-10 (D.N.H. Nov. 8, 2005) ("An award of costs and fees will serve the important purpose of deterring [plaintiff] and others from the kind of imaginative overreaching represented by the legal theory it attempted to force upon the unsuitable facts of this case."); *aff'd*, 669 F.3d at 63-64.

Fee-shifting would be equitable. "It is increasingly recognized that the person who forces another to engage counsel to vindicate, or defend, a right should bear the expense of such engagement and not his successful opponent." *Fogerty*, 510 U.S. at 529 (quoting W. Strauss, *Damage Provisions of the Copyright Law*, Study No. 22 p. 31 (H. Judiciary Comm. Print 1960)). Neither the parties' relative financial strengths nor the potential toll facing Goren weigh against an award. *See* Doc. 111 p. 15. The time for Plaintiffs to assess those risks was before filing suit. *See Zamoyski*, 767 F. Supp. 2d at 223-24. Goren and Small sought to exploit the fee-shifting potential of copyright claims by praying for attorney's fees under Section 505. Doc. 1 p. 7; Doc. 13 pp. 17-18. Any disparity between the parties' financial wealth is irrelevant where "both parties were financially able to litigate" the case. *Lotus Dev. Corp.*, 140 F.3d at 75. "[I]n determining whether to award attorney's fees under § 505, the district court should consider not whether the losing party can afford to pay the fees but whether imposition of fees will further the goals of the Copyright Act." *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 843 (11th Cir. 1999).

All of Xcentric's attorney's fees and costs were necessarily incurred in response to Plaintiffs' actions in this case, and were all causally associated with their copyright claims. The original complaint raised only a copyright infringement claim. The amended complaint added a declaratory judgment claim for copyright ownership and three state claims predicated on Xcentric publishing and asserting copyright ownership of the Reports. *See* Doc. 13 ¶¶ 72, 78 & 85 (alleging Xcentric published or publicly displayed the Reports "under color of its exclusive ownership of each such work"). Plaintiffs contended that Xcentric lost its CDA immunity by asserting copyright ownership. *Id.* ¶ 72; Doc. 45 p. 10. Because each non-copyright cause of action arose out of the copyright claims or defenses, all claims were so intertwined that they

should not be separated for purposes of calculating the Section 505 award. *See Zamoyski*, 767 F.

Supp. 2d at 221 (approving Section 505 award to "prevailing party in an action seeking

declaration of copyright ownership"); *InvesSys, Inc.,* 369 F.3d at 19-20 (affirming Section 505

award without reduction for work performed on state law claims, as question of ownership was

common to all claims). Xcentric should be fully compensated for its defense of each claim.

**D.     Xcentric's Itemized Fees and Costs Were Necessarily Incurred and Are Reasonable.**

The usual starting point for determining a reasonable fee's amount is the "lodestar"—"the

number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "This approach requires the district court to

ascertain the number of hours productively expended and multiply that time by reasonable

hourly rates." *Spooner*, 644 F.3d at 68 (copyright case). "Appropriate supporting documentation

includes counsel's contemporaneous time and billing records and information establishing the

usual and customary rates in the marketplace for comparably credentialed counsel." *Id.* (citations

omitted). "When ... the applicant for a fee has carried his burden of showing that the claimed rate

and number of hours are reasonable, the resulting product is presumed to be the reasonable fee"

to be awarded. *Blum v. Stenson*, 465 U.S. 886, 897 (1984); accord *Spooner*, 644 F.3d at 68.

In support of this Motion, Plaintiff submits declarations of counsel attesting to the

reasonableness of the fees requested, each accompanied by task-based itemized statements of

time expended derived from contemporaneous billing records. Exs. A-C, A1-C1. As evidenced

therein, Xcentric's counsel billed for 526.70 hours total expended in this matter over the past two

years: 234.80 hours by Jaburg & Wilk, P.C., 47.70 by David Gingras, and 244.20 by Daniel

Booth. *Id.* The hours billed were reasonably expended in this adversary proceeding. Counsel

staffed the matter efficiently, allocating discrete responsibilities between the firms and professionals involved, who strove to avoid any unnecessary, duplicative, or unproductive hours.

Xcentric's attorneys' hourly rates are also reasonable. Their rates are in line with "the 'prevailing market rate' for private counsel of comparable experience, skill, and reputation." *Blum*, 465 U.S. at 892 n.5. "The relevant community for purposes of this determination is Boston, 'the community in which the court sits[.]'" *Alfonso v. Aufiero*, 66 F. Supp. 2d 183, 197 (D. Mass. 1999) (*quoting Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988)).[5] *See Rockstar Consortium US LP & Netstar Techs., LLC v. Google, Inc.*, Misc. Civ. A. No. 14-91322-FDS, 2015 U.S. Dist. LEXIS 139770, *11 (D. Mass. Oct. 14, 2015) (awarding fees in patent case at hourly rates of $680 for partner, $408 for associate, and $228 for paralegal); *Dunn*, 2012 U.S. Dist. LEXIS 88818, *7-8 (approving fees in copyright case for defendants' counsel at average rate of $449 per hour); *Specialized Tech. Res., Inc. v. JPS Elastomerics Corp.*, 28 Mass. L. Rep. 163, 2011 Mass. Super. LEXIS 33, *26-28 (Mass. Super. Ct. Feb. 10, 2011) (awarding fees in trade secrets case in western Massachusetts at Boston firm's rates of $560-885 per hour for partners, $350-665 per hour for associates, and $105-200 per hour for paralegals), *aff'd*, 80 Mass. App. Ct. 841 (2011). "[M]edian hourly billing rates disclosed by the American Intellectual Property Law Association ('AIPLA') surveys on billing rates in the Boston area ... are a satisfactory way of setting the worth of lawyers' services for the purpose of making an award under a fee-shifting statute." *Agfa Corp. v. Creo Prods.*, No. 00-cv-18036-GAO, 2004 U.S. Dist.

---

[5] *Accord Sys. Mgmt. v. Loiselle*, 154 F. Supp. 2d 195, 209 (D. Mass. 2001) ("*Blum* instructs the Court to find the prevailing hourly rate in Boston"); *Guckenberger v. Boston Univ.*, 8 F. Supp. 2d 91, 103 (D. Mass. 1998) ("presumption that local Boston area rates apply"). The Court is entitled to take judicial notice of reasonable hourly rates for attorneys practicing in this District. *Wojtkowski v. Cade*, 725 F.2d 127, 131 (1st Cir. 1984).

LEXIS 21462, *9 (D. Mass. Oct. 5, 2004).[6] The 2013 AIPLA survey of attorneys specializing in intellectual property confirms that the rates sought are well within the range typically charged in Boston for similar matters. Ex. D. Partners surveyed at private law firms charged median hourly rates of $425 nationwide and $650 in the Boston metropolitan area. *Id.* p. 3. Associates were billed at median hourly rates of $305 nationwide and $392 in the Boston area. *Id.* p. 4.

Xcentric's counsel billed their time in this case at considerably less than the prevailing market rates charged by comparable attorneys in intellectual property cases in the Boston area. Jaburg & Wilk, P.C.[7] billed at $325 per hour for Maria Crimi Speth, a partner who has litigated intellectual property cases for more than 25 years; $170-200 per hour for associates Laura A. Rogal and Aaron K. Haar; and $100 per hour for paralegal Jessica L. VanDouser. Ex. A ¶¶ 3-8. David Gingras, Xcentric's former general counsel (*see* Doc. 8-1 ¶ 3), with approximately 13 years of intellectual property and internet litigation experience, billed at rates of $75-150 per

---

[6] *Accord Ascion, LLC v. Ruoey Lung Enter. Corp.*, No. 09-cv-11550-GAO, 2014 U.S. Dist. LEXIS 32425, *7-10 (D. Mass. Mar. 13, 2014); *see also MAG Jewelry Co. v. Cherokee, Inc.*, No. 04-cv-174T, 2007 U.S. Dist. LEXIS 96724, *8-10 (D.R.I. Dec. 26, 2007) (relying on AIPLA survey to assess "prevailing market rates for copyright litigators" in Providence).

[7] The rates of Xcentric's Phoenix-based counsel, Jaburg & Wilk, P.C. and David Gingras, are also reasonable in light of the typical rates for copyright counsel in Phoenix. "When a party recruits counsel from outside the vicinage of the forum court, that court may deem the 'relevant community' to be the community in which the lawyer maintains his or her principal office." *United States v. One Star Class Shoop Sailboat*, 546 F.3d 26, 40 (1st Cir. 2008). *See Broadcast Music, Inc. v. TLM Investments, P.L.C.*, No. CV 09-8131-PCT-JAT, 2010 U.S. Dist. LEXIS 73627, *21 (D. Ariz. July 21, 2010) ($475 per hour for copyright attorney with 23 years litigation experience was "commensurate with the rate for attorneys with similar levels of experience in the Phoenix legal market"); *Liberty Media Holdings, LLC v. Vinigay.com*, No. CV-11-280-PHX-LOA, 2011 U.S. Dist. LEXIS 153615, *59 (D. Ariz. Dec. 27, 2011) (recommending award at $450 per hour for copyright plaintiff's attorney with nine years intellectual property litigation experience, and at $150 per hour for paralegal), *adopted*, 2012 U.S. Dist. LEXIS 24978 (D. Ariz. Feb. 27, 2012). *See also* Ex. D (AIPLA survey) (median hourly rates, in western United States excluding Texas, Los Angeles and San Francisco, of $388 for partners and $250 for associates).

hour. Ex. B ¶¶ 3-4. Dan Booth, a partner with nine years of litigation experience, including seven years of intellectual property litigation, billed at $280 per hour. Ex. C ¶¶ 7-8. Counsel charged Xcentric significantly discounted rates. In similar cases, Attorneys Speth, Gingras and Booth customarily charge, respectively, $375, $295, and $409 per hour.[8] Ex. A ¶ 4; Ex. B ¶ 4; Ex. C ¶ 8.

Xcentric incurred $123,176.50 in reasonable attorney's fees in this matter at their actual billing rates: $51,708.00 by Jaburg & Wilk, P.C.; $3,652.50 by David Gingras; and $67,816.00 by Daniel Booth. Exs. A-C. Xcentric also incurred costs other than fees totaling $1,093.06. *Id.*

Xcentric's counsel should be compensated at the prevailing market rates, or at least their customary market rates, rather than the discounted rates actually billed. Attorney's fees awards are not "limited by the contractual fee agreement between plaintiff and counsel." *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989). "Should a fee agreement provide less than a reasonable fee calculated [by the lodestar method], the defendant should nevertheless be required to pay the higher amount." *Id.* at 93; *accord Blum*, 465 U.S. at 894-95. "[T]he rate that a private lawyer actually charges to clients in the ordinary course of his practice, though not conclusive, is a useful indicator of market value." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 16 (1st Cir. 2011).[9] The Court may "use counsel's standard rate, or the prevailing market rate in the forum, or a reasonable rate in between." *United States v. One Star Class Sloop Sailboat*, 546 F.3d 26, 40-41

---

[8] Attorney Booth has been awarded attorney's fees in copyright-related cases at his usual $409 rate in *Shirokov v. Dunlap, Grubb & Weaver PLLC*, 10-cv-12043-GAO, 2014 U.S. Dist. LEXIS 40642 (D. Mass. Mar. 27, 2014) and in *Lightspeed Media Corp. v. Smith*, 12-cv-889, 2013 U.S. Dist. LEXIS 168615 (S.D. Ill. Nov. 27, 2013), *aff'd*, 731 F.3d 699 (7th Cir. 2014). Ex. B ¶ 9.

[9] *But see Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996) ("[T]he copyright statute provides for 'reasonable' fees based on a lodestar figure represented by the reasonable hourly rate multiplied by the hours expended in the litigation; the actual fee arrangement between the client and the attorney is immaterial."); *AF Holdings LLC v. Nacasca*, No. C-12-2396 EMC, 2013 U.S. Dist. LEXIS 102249, *11-13 (N.D. Cal. July 22, 2013).

(1st Cir. 2008). The Court may also award postjudgment interest. 28 U.S.C. § 1961; *TMTV, Corp. v. Mass Prods., Inc.*, 645 F.3d 464, 475 (1st Cir. 2011).

Xcentric requests an award of its costs, including a reasonable attorney's fees at a rate determined in the Court's discretion. An award of fees at either the prevailing market rates or at counsel's customary rates would serve the interest of deterrence better than an award at the discounted rates charged, and would best reflect Xcentric's total success on Plaintiffs' claims.

If the Court determines to assess fees for attorneys Speth,[10] Gingras, and Booth at a reasonable prevailing market rate set at $409 per hour—still below market, but more in line with rates prevailing in this market for attorneys with their experience—a reasonable attorney's fee total is $176,636.40. In the alternative, if the Court determines to assess fees at counsel's customary billing rates, a reasonable attorney's fee total is $168,624.80. Again, in the alternative, if the Court were to assess fees at the discounted rates actually charged, a reasonable attorney's fee total is $123,176.50, the sum actually billed to Xcentric.

All of Xcentric's submitted fees and costs are customary, reasonable, and properly supported and documented herewith. They should be compensated in full.

For the foregoing reasons, and those stated in its previously filed reply (Doc. 126), Xcentric respectfully requests an award of its reasonable attorney's fees in the amount of $176,636.40 based on a $409 per hour market rate, or in the alternative $168,624.80 based on counsel's customary billing rates, or in the alternative $123,176.50, the amount actually billed; plus its costs in the amount of $1,093.06, with interest as provided by law.

---

[10] Each of Xcentric's alternative attorney's fees requests made herein includes its reasonable fees for all other counsel at Jaburg & Wilk, P.C. at their actual rates incurred, as documented in Exs. A & A1.

BOOTH SWEET LLP

October 20, 2015                    /s/  Dan Booth
                                    Daniel G. Booth (BBO# 672090)
                                    BOOTH SWEET LLP
                                    32R Essex Street #1A
                                    Cambridge, Massachusetts 02139
                                    (617) 250-8602
                                    dbooth@boothsweet.com

                                    JABURG & WILK, P.C.

                                    Maria Crimi Speth (admitted *pro hac vice*)
                                    3200 N. Central Avenue, Suite 2000
                                    Phoenix, Arizona 85012
                                    (602) 248-1000
                                    mcs@jaburgwilk.com

                                    *Counsel for Defendant Xcentric Ventures LLC*


### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing motion by using the Court's ECF system on this 20th day of October, 2015, thereby causing a true copy of said document to be served electronically upon Plaintiff Richard A. Goren personally and in his capacity as counsel of record for Plaintiffs.

/s/  Dan Booth